IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JIBRIL KOITA, et al.                    :
                                        :
            Petitioners                 :
                                        :
        v.                              :       No. 1:CV-00-0070
                                        :
JANET RENO,                             :       *PLSC Belisario*
                                        :
            Respondent                  :       (Judge Caldwell)

**FILED**
HARRISBURG, PA

FEB 2 4 2000

MARY E. D'ANDREA, CLERK
Per _____
            Deputy Clerk

**EXHIBITS TO JANET RENO'S RESPONSE TO**

**PETITION FOR WRIT OF HABEAS CORPUS**

DAVID M. BARASCH
United States Attorney
MARY CATHERINE FRYE
Chief, Civil Division
Assistant U.S. Attorney
P.O. Box 11754
Harrisburg, PA 17108-1754
(717) 221-4482
Fax: (717) 221-2246



COPY

U.S. Department of Justice

Immigration and Naturalization Service     **Additional Charges of Inadmissibility/Deportability**

In:    ☒ Removal proceedings under section 240 of the Immigration and Nationality Act

      ☐ Deportation proceedings commenced prior to April 1, 1997 under former section 242 of the Immigration and Nationality Act

**In the Matter of:**

Alien/Respondent: KOITA, Jibril

File No.: A74 190 504  Address: York County Prison, 3400 Concord Road, York, PA 17402

There is lodged against you the additional charge that you are subject to being taken into custody and deported or removed from the United States pursuant to the following provision(s) of law:

Section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, as amended ("the Act"), as an alien who has been convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial.

*Admitted*
*10/27/99*

In support of the additional charges above there is submitted the following factual allegation(s) ☒ in addition to ☐ in lieu of the allegations set forth in the original charging document

A   6.      You were convicted of Criminal Possession of Stolen Property in the Fifth Degree, in violation of New York Penal Law section 165.40, on January 9, 1995 in the Criminal Court of the City of New York, CD #15563.

A   7.      You were convicted of Conspiracy to Violate 18 USC section 1344, Bank Fraud, on February 24, 1999 in the United States District Court, District of Delaware, Case Number 1:98CR00107-001.

Dated:   8/31/99                _____
                                      (Signature of Service Counsel)

Form I-261(Rev. 4/1/97)N

dditional allegations (continued):

---

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the charging document and that you are inadmissible or deportable on the charges contained in the charging document. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

---

### Certificate of Service

This charging document was served on the respondent by me on ___8/31/99___, in the following manner and in
(Date)
compliance with section 239(a)(1)(F) of the Act:

☐ in person    ☐ by certified mail, return receipt requested    ☒ by regular mail
to: _Jibril Koita, Snyder County Prison, 600 Old Colony Road, Selinsgrove, PA 17870_
(Alien's address)

☐ The alien was provided oral notice in the _____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____     _WWBli Asst A District Counsel_
(Signature of respondent if personally served)     (Signature and title of officer)

Form I-261(Rev. 4/1/97)N



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**OFFICE OF THE IMMIGRATION JUDGE**
**YORK, PENNSYLVANIA**

In the matter of        ) )
     )      IN REMOVAL PROCEEDINGS
KOITA, Jibril      )      File Number
     )      A74 190 504
Respondent      )
     )

## IMMIGRATION AND NATURALIZATION SERVICE'S
## NOTICE OF INTENT TO OFFER EVIDENCE

Pursuant to OIJ Local Operating Procedure 3(c) and 5(b) (submission of evidentiary material), the United States Immigration and Naturalization Service herewith submits for filing the attached documentation (listed below). The Service may seek to offer this material at an Individual Calendar hearing in the above-captioned proceeding.

  **A**     Record of Deportable Alien (Form I-213)

  **B**     Record of Conviction in the Criminal Court of New York, New York County; Docket No. 95N002469 (Criminal Possession Stolen Property 5th Degree)

  **C**     Record of Conviction in the U.S. District Court, District of Delaware; Case No. 1:98CR00107-001 (Conspiracy)

  **D**     Indictment in the U.S. District Court, District of Delaware; Criminal Action No. 98-107

  **E**     Pre-sentence Investigation Report

  **F**     "Rap" Sheet

  **G**     Application to Register Permanent Residence or Adjust Status (Form I-485)

Respectfully submitted,

Jeffrey T. Bulier
Assistant District Counsel
INS/Philadelphia District
York

Dated: July 2, 1999

**CERTIFICATE OF SERVICE**

CASE NUMBER:     A74 190 504

I HEREBY CERTIFY that, on Friday, July 02, 1999, I caused to be served, the Service's Notice of Intent to Offer Evidence:

 X  by placing a true copy thereof in a sealed envelope, with postage thereon fully prepaid and causing the same to be mailed by first class mail to the person named at the address set forth below.

___ by causing to be personally delivered a true copy thereof to the person named at the address set forth below.

___ by FEDERAL EXPRESS:  AIRBORNE EXPRESS to the person named at the address set forth below.

___ by telefaxing with acknowledgment of receipt to the person named at the address set forth below.

Jibril Koita
INS Detainee
Snyder County Prison
600 Old Colony Road
Selinsgrove, Pennsylvania 17870

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

2-Jul-99

Celeste A. Knee
Legal Assistant
INS/Philadelphia District
York

# United States of America

DEPARTMENT OF JUSTICE

IMMIGRATION AND NATURALIZATION SERVICE

Philadelphia, PA

_JULY 2_ , 19 99

## CERTIFICATION

BY VIRTUE OF the authority vested in me by Title 8, Code of Federal Regulations, Part 103

a regulation issued by the Attorney General pursuant to Section 103 of the Immigration and

Nationality Act,

I HEREBY CERTIFY that the annexed documents are originals, or copies thereof, from the

records of the said Immigration and Naturalization Service, Department of Justice, relating to

File No. _____ A74 190 504 _____ , of which the Attorney General

is the legal custodian by virtue of Section 103 of the Immigration and Nationality Act.

J. Scott Blackman
District Director

Immigration and Naturalization Service
1600 Callowhill Street

Form G—24

U.S. Department of Justice    

Immigration and Naturalization Service

# Record of Deportable/Inadmissible Alien

| Family Name (CAPS)  First  Middle | | Sex Male | Hair BLACK | Eyes BROWN | Complexion MEDIUM |
|---|---|---|---|---|---|
| KOITA, Jabril | | | | | |

| Country of Citizenship GAMBIA | Passport Number and Country of Issue | File Number 074190504 | Height 5'7" | Weight 150 Lbs | Occupation NOT reported Supt 1 |
|---|---|---|---|---|---|

| U.S. Address |
|---|
| BOP ALLENWOOD LOW FCI  LSCI-ALLENWOOD PO BOX 1500 WHITE DEER PA 17887 |

Scars and Marks   None Visible

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at |
|---|---|
| 11/1/1989  NEW YORK, NY | |

F.B.I Number   716957XA8

☒ Single
☐ Divorced   ☐ Married
☐ Widow(er)   ☐ Separated

| Number, Street, City, Province (State) and Country of Permanent Residence |
|---|
| 2303 PENTLAND DRIVE #401 BALTIMORE MD US 21234 |

Method of Location/Apprehension   NA

| Date of Birth 3/20/1967 | Date of Action 6/1/1999 | Location Code ALLENWOOD PA |
|---|---|---|

| (At/Near) ALLENWOOD PA | Date & Hour 6/1/1999 |
|---|---|

| City, Province (State) and Country of Birth | AR | Form (Type & No.) |
|---|---|---|
| GAMBIA | ☐ | ☐ Lifted   ☐ Not Lifted |

By   BUNKS, David

| NIV Issuing Post and NIV Number | Social Security Account Name |
|---|---|

| Status at Entry Non-Immigrant | Status When Found 1 - Incarcerated |
|---|---|

| Date Visa Issued | Social Security Number 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 |
|---|---|

Length of Time Illegally in U.S

| Immigration Record | Criminal Record   SEE NARRATIVE |
|---|---|

| Name, Address, and Nationality of Spouse (Maiden name, if Appropriate) | Number & Nationality of Minor Children  1 Child US |
|---|---|

| Father's Name, Nationality, and Address, if Known  KOITA, Souleiman ; GAMBIA | Mother's Present and Maiden Names, Nationality, and Address, if Known  KOITA, Aminq ; Batichily ; GAMBIA |
|---|---|

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted ☒ Yes ☐ No | INS Systems Checks CIS DACS SENTRY NCIC | Charge Code Word(s) |
|---|---|---|---|

| Name and Address of (Last) (Current) U.S. Employer | Type of Employment | Salary $        hr. | Employed From:       To: |
|---|---|---|---|

Narrative (Outline particulars under which alien located/apprehended. Include details, not shown above, re: time, place, manner of last entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior).

BOP# 33373037
AKA: WURRIE, Momodou; KOITA, Jieril
1) CONVICTION: 2/23/1999 DELAWARE, FRAUD


SUBJECT IS NOT A CITIZEN OR NATIONAL OF THE UNITED STATES;
SUBJECT IS A NATIVE AND CITIZEN OF GAMBIA;
SUBJECT HAS FAMILY IN THE US;
SUBJECT HAS NO ATTORNEY, US MILITARY SERVICE, OR PENDING INS BENEFITS;
SUBJECT WAS ISSUED A NOTICE OF INTENT TO RESCIND HIS LPR STATUS DUE TO HIS INELIGIBILITY FOR LPR STATUS RESULTING FROM PRIOR CRIMINAL CONVICTIONS AND THE OMMISSION AND MISREPRESENTATION OF FACTS ON HIS I-485, APPLICATION FOR ADJUSTMENT OF STATUS TO LPR;

| Alien has been advised of communication privileges | 6/1/99 DB (Date/Initials) | BUNKS, David (Signature and Title of INS Official) | IHP Officer |
|---|---|---|---|

| Distribution: | Received (Subject and Documents) (Report of Interview)  Officer:  BUNKS, David IHP Officer  on:   6/1/1999   at   10:11:36 AM (time)  Disposition: Request NOTICE TO APPEAR  Examining Officer: Susan L. Mille |
|---|---|



REC_____

APR ___ ____

ALLENW_____

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

CERTIFICATE OF DISPOSITION
NUMBER:    15563

THE PEOPLE OF THE STATE OF NEW  YORK
                    VS

KIOTA           JIBRIL                    03/20/67

DEFENDANT                                 DATE OF BIRTH

27-24 SEXTON PLACE                        006855074N

ADDRESS                                   NYSID NUMBER

BRONX             NY                      01/08/95

CITY            STATE  ZIP                DATE OF ARREST/ISSUE

DOCKET NUMBER: 95N002469                  SUMMONS NO:

165.45 170.05 190.25

ARRAIGNMENT CHARGES


CASE DISPOSITION INFORMATION:

| DATE | COURT ACTION | JUDGE | PART |
|------|--------------|-------|------|
| 01/09/95 | PGSI PROB=3Y PG 165.40 | BENITEZ,P | APAR3 |
| 10/16/95 | WO | ELKINS,L | AP1 |
| 04/30/97 | ROW | FEINMAN,P | AP1 |
| 06/30/97 | SENT. Continued | WARD,L | AP17 |


    I HEREBY CERTIFY THAT THIS IS A TRUE EXCERPT OF THE RECORD ON FILE IN
THIS COURT.

C. Anster SCC                    04/15/99

COURT OFFICIAL SIGNATURE AND SEAL          DATE          FEE: NONE

(CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT
       SEAL OVER THE SIGNATURE OF THE COURT OFFICIAL.)



# CRIMINAL COURT OF THE CITY OF NEW YORK
### 100 CENTRE STREET
### NEW YORK, NEW YORK 10013

## CENTRAL CLERKS OFFICE
## ROOM 150

DATE: 4-15-99

NAME: Koita, Jieril

AKA:

DOCKET#: 97C019798

DATE OF ARREST: 12-29-97

ORIGINAL CHARGE: 190.25 P8, 240.50 P8, 240.20 P8

FINAL CHARGE: 240.20 P8 - Disorderly Conduct

NYSID#: 6855074N

DATE OF DISPOSITION: 6-30-98

DISPOSITION: Pled guilty to 240.20 P8 - A Violation

SENTENCE: Conditional Discharge

JUDGE: J. Sullivan

BY

C. Amster
Sr Court Clerk

REMARKS OR ADDITIONAL INFORMATION:

RECEIVED
APR 1 9 1999
ALLENWOOD INS

UNITED STATES DEPARTMENT OF JUSTICE
IMMIGRATION AND NATURALIZATION SERVICE
ALLENWOOD, PA


ATTESTATION TO CERTIFICATION OF
JUDGMENT AND CONVICTION RECORD(S)


In the Matter of:

Jibril KOITA

Alien Number:       A74 190 504               BOP:        33373-037

I certify that I have reviewed the official Bureau of Prisons inmate record file pertaining to the above listed person and that this is an authentic copy of the certified Judgment and conviction Record(s) contained in that file.


April 14, 1999
Date

Signature


MATTHEW A STERMAN
Type or Print Name


AGENT
Title


Attachment(s)

AO 245B (Rev. 3/95) Sheet 1 - Judgment in a Criminal Case

# United States District Court

## District of Delaware

| UNITED STATES OF AMERICA | JUDGMENT IN A CRIMINAL CASE |
|---|---|
| v. | (For Offenses Committed On or After November 1, 1987) |
| **Jibril Koita** | Case Number:  **1:98CR00107-001** |
| | Daniel A. Durkin, Esquire |
| | Defendant's Attorney |

## THE DEFENDANT:

- ☒ pleaded guilty to count(s)  **2 of the indictment.**
- ☐ pleaded nolo contendere to count(s) _____ which was accepted by the court.
- ☐ was found guilty on count(s) _____ after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C.  § 371 | Conspiracy | 03/10/1998 | 2 |

The defendant is sentenced as provided in pages 2 through __6__ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☒ Count(s)  **1 and 3 of the indictment**  are dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | |
|---|---|
| Defendant's Soc. Sec. No.:  **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** | **02/23/1999** |
| Defendant's Date of Birth:  **03/20/1967** | Date of Imposition of Judgment |
| Defendant's USM No.:  **33373-037** | |
| Defendant's Residence Address: | |
| **3940 Bronx Blvd.** | _Signature of Judicial Officer_ |
| **Bronx        NY        10461** | **Honorable Murray M. Schwartz** |
| | **United States District Judge** |
| | Name & Title of Judicial Officer |
| Defendant's Mailing Address: | |
| **3940 Bronx Blvd.** | |
| | _2/24/99_ |
| **Bronx        NY        10461** | Date |

AO 245B (Rev. 3/95) Sheet 2 - Imprisonment

Judgment-Page __2__ of __6__

DEFENDANT:        Jibril  Koita
CASE NUMBER:      1:98CR00107-001

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of _____6_____ month(s) _____.

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ a.m./p.m.  on _____ .

    ☐ as notified by the United States Marshal.

☒ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☒ before 2 p.m. on _____03/16/1999_____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

_____

Defendant delivered on ____3/16/99____ to ____ACF____
at _____ , with a certified copy of this judgment.

UNITED STATES MARSHAL

By _____
Deputy U.S. Marshal

AO 245B (Rev. 3/95) Sheet 3 - Supervised Re

DEFENDANT:          Jibril  Koita
CASE NUMBER:     1:98CR00107-001

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of _____3_____ year(s)

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below) . The defendant shall also comply with the additional conditions on the attached page (if indicated below).

**See Special Conditions of Supervision – Sheet    3.01**

# STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;
2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4)   the defendant shall support his or her dependents and meet other family responsibilities;
5)   the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or    other acceptable reasons;
6)   the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7)   the defendant shall refrain from excessive use of alcohol;
8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)   the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.



AO 245B (Rev. 3/95) Sheet 3 - Supervised Re

DEFENDANT:        Jibril Koita
CASE NUMBER:     1:98CR00107-001

# SPECIAL CONDITIONS OF SUPERVISION

The defendant shall not incur new credit charges or open additional lines without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule.

Should the defendant be deported from the United States and attempt to reenter the United States illegally during the term of his supervised release, he will be considered to be in violation of the conditions of supervised release.

AO 245B (Rev. 3/95) Sheet 5, Part A - Criminal Penalties

DEFENDANT:     Jibril  Koita
CASE NUMBER:     1:98CR00107-001

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $          100.00 | $ | $ |

☐ If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . .   $ _____

# FINE

The above fine includes costs of incarceration and/or supervision in the amount of $ _____

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ The interest requirement is waived.

    ☐ The interest requirement is modified as follows:

# RESTITUTION

☐ The determination of restitution is deferred in a case brought under Chapters 109A, 110, 110A and 113A of Title 18 for offenses committed on or after 09/13/1994, until _____.  An Amended Judgment in a Criminal Case will be entered after such determination.

☐ The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | ** Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
|  |  |  |  |
| Totals: | $ _____ | $ _____ |  |

AO 245B (Rev. 3/95) Sheet 5, Part B - Criminal Penalties

Judgment-Page ___5___ of ___6___

DEFENDANT: **Jibril Koita**

CASE NUMBER: **1:98CR00107-001**

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A  ☒  in full immediately; or

B  ☐  $ _____ immediately, balance due (in accordance with C, D, or E); or

C  ☐  not later than _____ ; or

D  ☐  in installments to commence _____ day(s) after the date of this judgment. In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E  ☐  in _____ *(e.g. equal, weekly, monthly, quarterly)* installments of $ _____ over a period of _____ year(s) to commence _____ day(s) after the date of this judgment.

The National Fine Center will credit the defendant for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

**Criminal monetary penalty payments, with the exception of restitution, should be made payable to Clerk, U.S. District Court. Any restitution ordered is to be made payable to the victim, and collected by the U.S. Probation Office.**

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments are to be made to the United States Courts National Fine Center, Administrative Office of the United States Courts, Washington, DC 20544, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program. If the National Fine Center is not operating in this district, all criminal monetary penalty payments are to be made

AO 245B (Rev. 3/95) Sheet 6 - Statement of Re:

DEFENDANT:     Jibril Koita
CASE NUMBER:   1:98CR00107-001

# STATEMENT OF REASONS

☒ The court adopts the factual findings and guideline application in the presentence report.

## OR

☐ The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):

**Guideline Range Determined by the Court:**

Total Offense Level:       9

Criminal History Category:      II

Imprisonment Range:       6 to 12 months

Supervised Release Range:     2 to 3 years    Probation Range: 1 to 5 years

Fine Range: $ 1,000.00 to $ 10,000.00

☒ Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution: $ N/A

☐ Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

☐ For offenses that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the foreseeable future under any reasonable schedule of payments.

☐ Partial restitution is ordered for the following reason(s):

☒ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

## OR

☐ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

## OR

☐ The sentence departs from the guideline range:

☐ upon motion of the government, as a result of defendant's substantial assistance.

☐ for the following specific reason(s):

CERTIFIED: 2/24/99
AS A TRUE COPY:
ATTEST:
PETER T. DALLEO, CLERK

BY _Donna M. Leninger_

Deputy Clerk

J.S. Department of Justice
Immigration and Naturalization Service



**Notice to Appear**

## In removal proceedings under section 240 of the Immigration and Nationality Act

File No: A74 190 504

In the Matter of:

Respondent:   KOITA, Jibril          BOP#33373037          PRD 6/4/99

LSCI ALLENWOOD  PO BOX 1500
WHITE DEER                                                    PA      17887          570-547-1990
_____
(Number, street, city, state and ZIP code)                                    (Area code and phone number)

☐  1. You are an arriving alien.
☐  2. You are an alien present in the United States who has not been admitted or paroled.
☒  3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:

You are not a citizen or national of the United states;

You are a native of Gambia and a citizen of Gambia;

You were admitted to the United States at New York, NY on or about November 1989 as a non-immigrant;

Your status was adjusted to that of a lawful permanent resident as of June 14, 1995 at New York, NY;

SEE CONTINUATION SHEET

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 237(a)(1)(A) of the Immigration and Nationality Act (Act), as amended, in that at the time of entry or of adjustment of status, you were within one or more of the classes of aliens inadmissible by the law existing at such time, to wit: aliens who seek to procure, or have sought to procure, or who have procured a visa, other documentation, or admission into the United States, or other benefit provided under the Act, by fraud or by willfully misrepresenting a material fact, under Section 212(a)(6)(C)(i) of the Act.

☐  This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐  Section 235(b)(1) order was vacated pursuant to:   ☐  8 CFR 208.30(f)(2)    ☐  8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:  EOIR
IMMIGRATION COURT, 3434 CONCORDE RD, YORK PA 17402
_____
(Complete Address of Immigration Court, Including Room Number, if any)
on _____TO BE SET_____ at _____TO BE SET_____ to show why you should not be removed from the United States based on the
          (Date)                        (Time)
charge(s) set forth above.

                                                    Robert Culley, IHP Director
                                                    _____
                                                    (Signature and Title of Issuing Officer)

Date: _6/1/99_                                      _____
                                                    Allenwood, PA
                                                    (City and State)

### See reverse for important information

Form I-862 (Rev. 4-1-97)

**U.S. Department of Justice**
Immigration and Naturalization Service

**Continuation Page for Form   I-862**

| Alien's Name<br>KOITA, Jibril          BOP#33373037<br>PRD 6/4/99 | File Number<br>A74 190 504 | Date<br>JUN 0 2 1999 |
|---|---|---|

A 5a.  On June 7, 1995, you filed form I-485, an application to adjust to permanent residence under section 245 of the Immigration and Nationality Act, as amended, based upon section 203(c), the Diversity Immigrant Visa Program.

A 5b.  On that form I-485, you answered that you had been arrested only for not paying a subway fare, in New York, in 1990. You signed that form I-485 on April 1, 1995, certifying under penalty of perjury under the laws of the United States, that the application was all true and correct.

5c.  You were also arrested in Yonkers, NY. on December 5, 1994 for petty larceny 4, in New York on January 8, 1995 for grand larceny 4,  criminal possession of stolen propery 4, criminal impersonation of another person, and forgery 3rd, in New York on January 31, 1995 for grand larceny, forgery deed will codial at, possession of forged instruments 2, and criminal possession of stolen property 4, value over $1000.

*neither admit
nor deny*

| Signature | Title<br>Robert Culley, IHP Director |
|---|---|

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB #1105-006
**Notice of Appeal to the Board of Immigration**
**Appeals of Decision of Immigration Judge**

| | | |
|---|---|---|
| 1. | List Name(s) and "A" Number(s) of all Applicant(s)/Respondent(s): | For Official Use Only |

Gladwin Wilson                              A41-928-716

> **!** **WARNING TO ALL APPLICANT(S)/RESPONDENT(S):** Names and
> • "A"Numbers of everyone appealing the order must be written in Item #1.

2.  Applicant/Respondent is currently    [X] DETAINED    [ ] NOT DETAINED.

3.  Appeal from the Immigration Judge's decision dated  10/15/99

4.      **State in detail the reason(s) for this appeal You are not limited to the space provided below;**
        **use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.**

> **!** **WARNING :** The failure to specify the factual or legal basis for the appeal may lead to sum-
> • mary dismissal without further notice unless you give specific details in a timely , separate
>   written brief or statement filed with the Board.

I. The immigration judge misapplied the law when he found that the respondent did not meet the standard of the CAT when the court did not consider respondent's statement and evidence in the record. See Attached

II. The immigration judge made na error as to the facts when the court found the alien credible but failed to take into account his affidavit, and testimony together.  Specifically, the affidavit rebutted the conclusion of the Court that the alen was not affiliated with a political organization back in his home country.  See Attached

Staple Check or Money Order Here.
Include your name(s) and "A"number(s)

(Attach more sheets if necessary)

(Form continues on back)

5.   I   [X] do
         [ ] do not
desire oral argument before the Board of Immigration Appeals.

6.   I   [X] will
         [ ] will not
file a separate written brief or statement in addition to the "Reason(s) for Appeal" written above or accompanying this form.

**WARNING**: Your appeal may be summarily dismissed if you indicate in Item #6 that you will file a separate written brief or statement and within the time set for filing you fail to file the brief or statement and do not reasonably explain such failure.

**SIGN HERE** ➔   7.   X _____         November 11, 1999
                         Signature of Person Appealing                    Date
                         *(or attorney or representative)*

8.                                                      9.

| Mailing Address of Applicant(s)/Respondent(s) | Mailing Address of Attorney or Representative |
|---|---|
| Gladwin Wilson | Frank  Billings  Lindner |
| (Name) | (Name) |
| C/O 205 floral Vale Blvd. | 205 Floral Valle Blvd. |
| (Street Address) | (Street Address) |
| (Apartment or Room Number) | (Suite or Room Number) |
| Yardley          PA          19067 | Yardley          PA          19067 |
| (City, State, Zip Code) | (City, State, Zip Code) |

**WARNING**: An attorney or representative will not be recognized as counsel on appeal and will not receive documents or correspondence in connection with the appeal, unless he/she submits a completed Form EOIR-27.

## CERTIFICATE OF SERVICE
### (Must Be Completed)

10.

I   Frank Lindner _____   mailed or delivered a copy of this notice of appeal
         (Name)

on   11/12/99 _____ to   INS Trial Attorney _____
         (Date)                              (Opposing Party)

at   3400 Concord Rd. York PA 17402 _____
         (Address of Opposing Party)

**SIGN HERE** ➔   X _____
                         Signature of Person Appealing
                         *(or attorney or representative)*

### Have You?

- [ ] Read all of the General Instructions
- [ ] Provided all of the requested information
- [ ] Completed this form in English
- [ ] Provided a certified English translation for all non-English attachments

- [ ] Signed the form
- [ ] Served a copy of this form and all attachments on the opposing party
- [ ] Completed and signed the Certificate of Service
- [ ] Attached the required fee or fee waiver request

## ATTACHMENT

The immigration judge made a finding that the alien's criminal activity was not particularly serious to bar him from withholding of deportation for torture of convention purposes. Therefore, the client was eligible for special withholding of deportation. The Court made a finding that the alien testified credibly. The Court made a finding that the alien based on his testimony did not establish a political connection sufficient enough to demonstrate a clear probability that the alien will be tortured back in his home country. He also went on to state that he did not even establish the standard necessary for withholding of deportation. The Court focused on testimony which was presented during the hearing, where the Respondent stated that he did not know the political affiliations of his business partner through the import/export business. The Court confused the facts that made the assumption that the contact person with the political organization in which the Respondent was involved with in New York City, and the business associate with his import/export business was the same person. This confusion led the Court to an improper conclusion that the Respondent did not know the political affiliation of his one and only contact in his home country, which allegedly imputed the political opinion upon him, that Respondent was a decedent. The objective facts of the record demonstrate that the Respondent faced some kind of persecution when he was in his home country. For whatever reason Respondent was traveling back to his home country yearly, however, at the exact point in time where Respondent states that he was arrested and confronted by the police on a trip back to his home country was, in fact, the last trip that Respondent took to his homeland. This coincides with the testimony where Respondent states that he left only days after arriving in his home country. Additionally, even though he established a pattern of returning back to his home country yearly, that pattern ceased after this incident.

The Respondent was involved with a political organization in New York, whose job was to support a political party back in his home country. The Respondent testified that he was accused of being a decedent, and this would be internally consistent with his claims. The Respondent testified that he worked as a recruiter attempting to bring people into the New York organization for the purposes of supporting his political party back in his home country. In the process of working as a recruiter, part of his duties was to have liaison communications with individuals back in the home country. These communications were uncovered by the government in the Respondent's home country, and when Respondent returned back home for a routine, yearly trip, he was confronted, arrested, and detained. Assuming that the Court found the Respondent credible, as it stated, and assuming that the Court made the mistake of facts as indicated above, then it would be the claim of the Respondent that the Court made an error as to the facts, which led to an improper conclusion of law. Additionally, the Court failed to consider the exculpatory evidence within the record, specifically the affidavit submitted by the Respondent. Further, the Court never stated its concerns directly to the Respondent, giving him an opportunity to clarify or explain his answers. Based on the foregoing facts, Respondent would ask that the Board of Immigration of Appeals to remand this case back to the immigration judge for further consideration.

**U.S. DEPARTMENT OF JUSTICE**

Executive Office for Immigration Review

Office of the Immigration Judge

In the Matter of:

_____

~~_____~~

**RESPONDENT**

Case No.: A _____

Docket: _____

IN DEPORTATION PROCEEDINGS

## ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on _____

This memorandum is solely for the convenience of the parties. If the proceedings should be appealed, the Oral Decision will become the official decision in this matter.

[X] The respondent was ordered deported to _____.

[ ] Respondent's application for voluntary departure was denied and respondent was ordered deported to _____ or in the alternative to_____.

[ ] Respondent's application for voluntary departure was granted until _____, with an alternate order of deportation to _____ or _____.

[X] Respondent's application for asylum was ( )granted ( )denied ( )withdrawn (X)other.

[X] Respondent's application for withholding of deportation was ( )granted (X)denied ( )withdrawn ( )other.

[ ] Respondent's application for suspension of deportation was ( )granted ( )denied ( )withdrawn ( )other.

[ ] Respondent's application for waiver under Section _____ of the Immigration and Nationality Act was ( )granted ( )denied ( )withdrawn ( )other.

[ ] Respondent's application for _____ was ( )granted ( )denied ( )withdrawn ( )other.

[ ] Proceedings were terminated.

[ ] The application for adjustment of status under Section (216) (216A) (245) (249) was ( )granted ( )denied ( )withdrawn ( )other. If granted, it was ordered that the respondent be issued all appropriate documents necessary to give effect to this order.

[ ] Respondent's status was rescinded under Section 246.

[X] Other _____

[ ] Respondent was advised of the limitation on discretionary relief for failure to appear as ordered in the Immigration Judge's oral decision.

_____
Immigration Judge

Date: _____

Appeal: RESERVED/WAIVED ( A / I / B )

Form EOIR - 37
REV. - JUNE 93

**LINDNER & LINDNER**
**ATTORNEYS AT LAW**
205 FLORAL VALE BOULEVARD
YARDLEY, PA 19067

REMITTANCE ADVICE

60-259/3

15871

PAY One hundred and ten ———————— 00 DOLLARS

CHECK
AMOUNT

| DATE | TO THE ORDER OF | HRS | GROSS | INC. TAX | SOC. SEC. | P.I.T. | MED. | LOCAL | |
|------|-----------------|-----|-------|----------|-----------|--------|------|-------|---|
| 11-11-99 | U.S Department of Justice | | | | | | | | $ 110 |

Appel fee
Wilson

DESCRIPTION

**PREMIER BANK**   YARDLEY, PA

⑈"015871⑈" ⑉031902591⑉: ⑈"00 15883⑈"

SECURITY FEATURES, MICRO PRINT BORDERS · COLORED BRICK PATTERN · WATERMARK & CARBON STRIP ON REVERSE SIDE · MISSING FEATURE INDICATES A COPY

NOTICE OF ENTRY OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE
BEFORE THE BOARD OF IMMIGRATION APPEALS
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

| In the Matter: | DATE  Nov  11  1995 |
| --- | --- |
| **Appeal** | ALIEN NUMBER *(list lead alien number and all family member alien numbers if applicable)* |

I hereby enter my appearance as attorney *(or representative)* for and at the request of the following named person(s):

A 41-928-716
A
A

NAME  Gladwin Wilson       (Detained)

| ADDRESS | *(Apt. No.)* | *(Number & Street)* | *(City)* | *(State)* | *(Zip Code)* |
| --- | --- | --- | --- | --- | --- |

Berks Detention Center  Berks County PA

Check if Applicable Item(s) below:

☒ 1.   I am an attorney and a member in good standing of the bar of the Supreme Court of the United States or of the highest court of the following State, territory, insular possession, or District of Columbia
Supreme Court Of Pennsylvania                                       and am not under a court
*(Name of Court)*
or administrative agency order suspending, enjoining disbarring, or otherwise restricting me in practicing law.

☐ 2.   I am an accredited representative of the following named religious, charitable, social service, or similar organization established in the United States and which is so recognized by the Board:

☐ 3.   I am associated with_____, the attorney of record who previously filed a notice of appearance in this case and my appearance is at his/her request. *(If you check this item, also check item 1 or 2 whichever is appropriate.)*

☐ 4.   Other *(Explain fully.)*

| SIGNATURE | COMPLETE ADDRESS ☐ Check here if this is a new address |
| --- | --- |
| | 205 Floral Vale Blvd. |
| | Yardley, PA 19067 |

| NAME *(Type or print)* | TELEPHONE NUMBER |
| --- | --- |
| Frank Billings Lindner  Esq | 215-579-9800 |

PURSUANT TO THE PRIVACY ACT OF 1974, I HEREBY CONSENT TO REPRESENTATION BY AND THE DISCLOSURE TO THE FOLLOWING NAMED ATTORNEY OR REPRESENTATIVE OF ANY RECORD PERTAINING TO ME WHICH APPEARS IN ANY EOIR SYSTEM OF RECORDS:

Frank Billings Lindner

*(Name of Attorney or Representative)*

| NAME OF PERSON CONSENTING | SIGNATURE OF PERSON CONSENTING | DATE |
| --- | --- | --- |
| Gladwin Wilson | | |

*(NOTE: Execution of this box is required under the Privacy Act of 1974 where the person being represented is or claims to be a citizen of the United States or an alien lawfully admitted for permanent residence.)*

FORM EOIR-27

**U.S. DEPARTMENT OF JUSTICE**
Executive Office for Immigration Review
Office of the Immigration Judge

In the Matter of:                                          Case No.: A _41-928-76_

_WILSON, Gladwin_                                    Docket: _York_

RESPONDENT                        IN DEPORTATION PROCEEDINGS

## ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on _10/15/99_
This memorandum is solely for the convenience of the parties. If the proceedings should be appealed, the Oral
Decision will become the official decision in this matter.

☒ The respondent was ordered deported to _Guyana_

☐ Respondent's application for voluntary departure was denied and respondent was ordered deported to
_____ or in the alternative to_____ .

☐ Respondent's application for voluntary departure was granted until _____ , with an alternate
order of deportation to _____ or _____ .

☒ Respondent's application for asylum was ( )granted ( )denied ( )withdrawn (X)other. _preliminary_

☒ Respondent's application for withholding of deportation was ( )granted (X)denied ( )withdrawn ( )other.

☐ Respondent's application for suspension of deportation was ( )granted ( )denied ( )withdrawn ( )other.

☐ Respondent's application for waiver under Section _____ of the Immigration and
Nationality Act was ( )granted ( )denied ( )withdrawn ( )other.

☐ Respondent's application for _____ was ( )granted ( )denied ( )withdrawn ( )other.

☐ Proceedings were terminated.

☐ The application for adjustment of status under Section (216)(216A)(245)(249) was ( )granted ( )denied
( )withdrawn ( )other. If granted, it was ordered that the respondent be issued all appropriate documents
necessary to give effect to this order.

☐ Respondent's status was rescinded under Section 246.

☒ Other _CAT relief denied_

☐ Respondent was advised of the limitation on discretionary relief for failure to appear as ordered in the
Immigration Judge's oral decision.

_due 11/15/99_

Immigration Judge

Date: _10/15/99_

Appeal: RESERVED/WAIVED ( A / I / B )

Form BOIR - 37
REV. - JUNE 93



**U.S. Department of Justice**

Immigration and Naturalization
Service

Philadelphia District
*1600 Callowhill Street*
*Philadelphia, PA   19130*

June 29, 1999

United States District Court
United States Courthouse
ATTN:  Criminal Records
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Sir/Madam:

Would you kindly furnish this office with a certified copy of the indictment referencing the
following individual:

| | |
|---|---|
| NAME: | Gladwin Wilson |
| DOB: | 01/30/1959 |
| DOCKET NO.: | 97-CR-43 |
| CHARGE: | Conspiracy to utter and possess forged and counterfeit securities, a class D felony |

Please mail the document to the following address:

Department of Justice
U.S. Immigration & Naturalization Service
Office of District Counsel
ATTN:  Eileen Schaller
1600 Callowhill Street, 4th Floor
Philadelphia, PA 19130

If you need any further information, please contact me at (215) 656-7146.

Eileen Schaller
Paralegal Specialist



EOC:BM
F.#9605144
GWILSON.IND

FILED
IN CLERKS OFFICE
U.S. DISTRICT COURT ED. N.Y.

★ JAN 15 1997 ★

P.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

A TRUE COPY
ATTEST
DATED JUL 0 2 1999
ROBERT C. HEINEMANN
BY ............................... CLERK
DEPUTY CLERK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

GLADWIN WILSON, also known as
   "Baldwin Wilson" and "Gladstone
   Wilson,"

                    Defendant.

I N D I C T M E N T

Cr. No. **CR 97 0049**
(T. 18, U.S.C., §§ 371 and
513(a), 2 and
3551 et seq.)

BLOCK, J.

THE GRAND JURY CHARGES:

GO, M.

COUNT ONE

        In or about and between June 1995 and July 1995, both

dates being approximate and inclusive, within the Eastern

District of New Yo . . . . . . . . . . . . . . . . . . . . WILSON,

also known as "Baldwin Wilson" and "Gladstone Wilson," and others

did knowingly and intentionally conspire to utter and possess

forged and counterfeited securities of an organization, to wit:

checks from the Lyndon Baines Johnson Health Clinic (the

"Clinic"), with the intent to deceive another person and

organization, in violation of Title 18, United States Code,

Section 513(a).

        In furtherance of the conspiracy and to effect the

objectives thereof, within the Eastern District of New York and

elsewhere, the defendant GLADWIN WILSON, also known as "Baldwin

Wilson" and "Gladstone Wilson," and others did commit and cause

to be committed the following:

## OVERT ACTS

a.  In or about June 1995, GLADWIN WILSON, also known as "Baldwin Wilson" and "Gladstone Wilson," met with others in Brooklyn, New York and discussed how to obtain counterfeited Clinic checks.

b.  On or about July 18, 1995, the defendant GLADWIN , also known as "Baldwin Wilson" and "Gladstone Wilson," and others went to Key Bank in White Plains, New York, where they deposited counterfeited Clinic checks totaling approximately $117,000 and obtained four bank checks totaling $40,000.

c.  On or about July 18, 1995, the defendant GLADWIN WILSON, also known as "Baldwin Wilson" and "Gladstone Wilson," and others exchanged the four bank checks for $40,000 in cash.

d.  On or about July 18, 1995, the defendant GLADWIN WILSON, also known as "Baldwin Wilson" and "Gladstone Wilson," and others divided the $40,000 in cash.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

3

COUNT TWO

In or about and between June 1995 and July 1995, both
dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendant GLADWIN WILSON,
also known as "Baldwin Wilson" and "Gladstone Wilson," and others
did knowingly and intentionally utter and possess forged and
counterfeited securities of an organization, to wit:  checks from
the Lyndon Baines Johnson Health Clinic, with the intent to
deceive another person and organization.

(Title 18, United States Code, Sections 513(a), 2 and
3551 et seq.)

A TRUE BILL

_Muriel Williams_
FOREPERSON


ZACHARY W. CARTER
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _Benton J. Underwood_
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.131

FTA

Miragliotta

needs Paper work -

1/5
5/15/98

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x
UNITED STATES OF AMERICA                    JUDGMENT INCLUDING SENTENCE
          -v-                               UNDER THE SENTENCING REFORM ACT

6/10/98

GLADWIN WILSON,                             CASE NUMBER:CR-97-43-01 (FB)
          Defendant.  Um miragliott         GEORGE LEWIS, ESQ. 403-9675
                  FTA                       14 METROTECH CENTER, SUITE 213
-----------------------------------x        BROOKLYN, NY 11201            4/14/
                                            Defendant's Attorney & Address  L/m

XX_  pleaded guilty to count ONE OF THE INDICTMENT.

        Accordingly, the defendant is ADJUDGED guilty of such count(s), which involve
the following offenses:
TITLE & SECTION              NATURE & OFFENSE              COUNT NUMBER(S)
TITLE 18 USC           THE DEFENDANT AND OTHERS CONSPIRED        1
SECTION 371           TO UTTER AND POSSESS FORGED & COUNTERFEIT
                              SECURITIES.

The defendant is sentenced as provided in pages 2 through     of this Judgment.
The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

XX_  Count TWO is dismissed on the motion of the United States.
XX_  It is ordered that the defendant shall pay to the United States a special
     assessment of $50.00 which shall be due XX_ immediately:

It is further ORDERED that the defendant shall notify the United States Attorney
for this district within 30 days of any change of residence or mailing address
until all fines, restitution, costs, and special assessments imposed by this
Judgment are fully paid.

Defendant's Soc. Sec #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          APRIL 3, 1998
                                           Date of Imposition of Sentence


Defendant's Mailing Address:               THE HONORABLE FREDERIC BLOCK

 3126 DWIGHT AVENUE                        April 7, 1998
                                                   Date

FAR ROCKAWAY, NY 11691
                                           A TRUE COPY ATTEST
                                   Date:   4/7/98
                                           ROBERT C. HEINEMANN
A TRUE COPY                                CLERK OF COURT
DATED. JUL 02 1998           FEB 20 1998
ROBERT C. HEINEMANN                  By:
          CLERK            TIME A.M.
BY                                         MIKE J. INNELLI
      DEPUTY CLERK                         DEPUTY CLERK

Defendant: GLADWIN WILSON                    Judgment - Page    of
Case Number: CR-97-43-01(FB)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau
of Prisons to be imprisoned for a term of <u>TWELVE MONTHS (12) AND ONE DAY.</u>

<u>XX</u>   The Court makes the following recommendations to the Bureau of Prisons:
THAT THE DEFENDANT BE INCARCERATED IN THE NORTH EAST REGION

____   The defendant is remanded to the custody of the United States Marshal.
____   The defendant shall surrender to the United States Marshal for this
district,

              ___    at _____a.m./p.m. on _____.
              ___

<u>XX</u>    The defendant shall surrender for service of sentence at the institution
designated by the Bureau of Prisons

                        <u>XX</u>    before 2:00 p.m. on   <u>5/15/98</u>   .
                        <u>XX</u>    as notified by the United States Marshal.
                        ___    as notified by the Probation Office.

### RETURN

I have executed this Judgment as follows:

_____
_____
_____
_____

Defendant delivered on <u>2-11-99</u>   to   <u>ALF</u>
<u>FA</u>              , with a certified copy of this Judgment.

                                        United States Marshal

                                    By _____

Defendant: GLADWIN WILSON                    Judgment – Page        of
Case Number: CR-97-43-01(FB)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release
for a term of THREE (3) YEARS WITH THE FOLLOWING SPECIAL CONDITION: THAT HE MAKE
RESTITUTION TO KEY BANK IN THE SUM OF $10,000.00 ACCORDING TO THE FOLLOWING
SCHEDULE; $3,000.00 BY THE END OF THE FIRST YEAR, $3,000.00 BY THE END OF THE
SECOND YEAR, AND $4,000.00 BY THE END OF THE THIRD YEAR.

While on supervised release, the defendant shall not commit another Federal,
state, or local crime and shall comply with the standard conditions that have been
adopted by this court (set forth on the following page).   If this judgment imposes
a restitution obligation, it shall be a condition of supervised release that the
defendant pay any such restitution that remains unpaid at the commencement of the
term of supervised release.    The defendant shall comply with the following
additional conditions:

____   The defendant shall pay any fines that remain unpaid at the commencement
           of the term of supervised release.

Defendant: GLADWIN WILSON                    Judgment - Page    of
Case Number: CR-97-43-01(FB)

SOUTHERN ... OF PRISONS

__XX__  The court adopts the factual findings and guideline application in the presentence report.

OR

_____  The court adopts the factual findings and guideline application in the presentence report except  (see attachment, if necessary)

Guideline Range Determined by the Court:

        Total Offense Level:_____13_____

        Criminal History Category:_____I_____

        Imprisonment Range:__12__to_18___months

        Supervised Release Range:_2___to_3____years

        Fine Range:$_2,000.00____ to $_20,000.00_____

        __XX__  Fine is waived or is below the guideline range, because of the defendant's inability to pay.

        Restitution:    $_____

        _____  Full restitution is not ordered for the following reason(s)

__XX__  The sentence is within the guideline range, that range does not exceed 2 months, and the court finds no reason to depart from the sentence called for by application of the guidelines.

OR

_____  The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

_____  The sentence departs from the guideline range

        _____  Upon motion of the government, as a result of defendant's substantial assistance.

        _____  for the following reason(s):

Defendant: GLADWIN WILSON                    Judgment - Page     of
Case Number: CR-97-43-01(FB)

### STANDARD CONDITIONS OF SUPERVISION

While the defendant is on probation or supervised release pursuant to this Judgment:

1) The defendant shall not commit another Federal, state or local crime;
2) the defendant shall not leave the judicial district without the permission of the court or probation officer;
3) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
4) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
5) the defendant shall support his or her dependents and meet other family responsibilities;
6) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
7) the defendant shall notify the probation officer within seventy-two hours of any change in residence or employment;
8) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
9) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
10) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
11) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
12) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
13) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
14) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

These conditions are in addition to any other conditions imposed by this Judgment.

U.S. Department of Justice
Immigration and Naturalization

Record of Deportable/Inadmissible Alien

| CONTROL Name (Last, First, Middle)  INMATE# 47748-053 PRD 6/15/99 | | | | | | | Aliases |
|---|---|---|---|---|---|---|---|
| Gladwin          WILSON | | | | | | | |

| Birthdate | Age | Marital Status | Widowed | File Number | | Name of Last/Current U.S. Employer |
|---|---|---|---|---|---|---|
| 1/30/59 | 40 | ☐ Single  ☒ Married  ☐ Separated  Divorced | | A41 928 716 | | N/A |

| Sex | Hair | Eyes | Complexion | Height | Weight | Scars or Marks | Address of U.S. Employer |
|---|---|---|---|---|---|---|---|
| M | BLK | BRN | DARK | 510 | 215 | SC ABOVE L EYE | N/A |

| U.S. Address/Mail     (Number)     (Street)          (City)               (State) (ZIP CODE) | Type of Employment |
|---|---|
| LSCI ALLENWOOD, P.O. BOX 1500          WHITE DEER          PA        17887 | N/A |

| Alien's Telephone # | Date of Action | Location Code | Salary | From: | To: |
|---|---|---|---|---|---|
| (570) 547-1990 | 3/17/99 | ALW | N/A    hr.| N/A | N/A |

| City, Province (State) and Country of Birth | Country of Citizenship | Passport Number and Country of Issue |
|---|---|---|
| GEORGETOWN, GUYANA | GUYANA | 247904 GUYANA |

| Date, Place, Time, and Manner of Last Entry/Attempted Entry | Status at Entry | Length of Time Illegally in U.S. | Status When Foun |
|---|---|---|---|
| 4/18/88     NEW YORK, NEW YORK     PLANE | P5-1 IMMIGRANT | NONE | INSTITUTION |

| Foreign Address/Residence (Number, Street, City, Province (State), Country) | Arrived From/Boarded At |
|---|---|
| GEORGETOWN, GUYANA | GUYANA |

| Method of Location/Apprehension | (At/Near) | Date & Hour | Apprehended by |
|---|---|---|---|
| 511.2.2 | ALW | 3/17/99 | MATTHEW A STERMAN / AGENT |

| Visa # | Date of Visa Iss./Loc. | Name on Social Security Card | Social Security No. |
|---|---|---|---|
| ☐ NIV  ☒ IMM  ☐ None | 3/8/88 GEORGETOWN | GLADWIN WILSON | 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 |

| Name, Address, and Nationality of Spouse (Maiden Name, if appropriate) | Number & Nationality of minor Children |
|---|---|
| ELLEN WILSON, LPR OF US, GUYANA | 3 GUYANA |

| Father's Name, and Nationality and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|
| OSCAR WILSON, GUYANA, GUYANA | JOHANNA WILSON, GUYANA, GUYANA |

| Monies Due/Property in U.S. Not in immediate possession | Record Checks Completed ☐ None  ☐ Other (specify) | | | | F.B.I. No. |
|---|---|---|---|---|---|
| ☒ None Claimed  ☐ See Form I-43 | ☒ CIS  ☒ DACS ☒ NCIC ☒ NIIS  ☐ OASIS ☐ STSC | | | | 206953DB0 |

| Deportation Charge(s) | Exclusion Ground(s) |
|---|---|
| 237 (a) ( 2 )( A )( iii ); 237 (a) ( )( ) ; 237 (a) ( )( ) | 212 (a) ( )( ) ; 212 (a) ( )( ) |

| Place a check on the appropriate box(es) if any of the following actions were completed: | | | DACS Citation(s) |
|---|---|---|---|
| ☐ Doc Lifted      (No.) | ☒ Fingerprinted  ☒ Photographed | ☐ I-217 Executed | R2A3 |

| Special Programs | Fraudulent Documents | Criminal Record: ☒ Yes ☐ No | Immigration Record: ☒ Yes ☐ No |
|---|---|---|---|
| ☐ OCDETF       ☐ Sanctions  ☐ Grandfathered Alien  ☐ SAVE | ☐ Sanctions  ☐ Other | ☐ CA  ☐ CO  ☐ SR  ☒ AF | ☐ Prior Deport.  ☐ Prior VR |

| Smuggled Alien ☐ Claimed ☐ Verified | Assistance in Apprehension | | |
|---|---|---|---|
| ☐ Land  ☐ Water  ☐ Aircraft | ☐ Sensors  ☐ Observation Aircraft | ☐ K-9 Patrol  ☐ Horse Patrol | ☐ All Terrain Vehicle  ☐ Other Observation Device (specify) |

| Contraband: | Funds in Possession | Alien Initial        Date | A list of free legal services has been provided: |
|---|---|---|---|
| ☐ Narcotics ☐ Currency  ☐ Weapons ☐ Other | NONE | | ☒ Yes  ☐ No (formal proceedings were not instituted) |

| Alien has been advised of communication privileges pursuant to 8 CFR 242.2(g). | Initial | Date |
|---|---|---|

Narrative: Include details on above and whether or not eligible for special status program (e.g., TPS, etc.)

SUBJECT IS A CITIZEN AND NATIVE OF GUYANA. *R's objected to this statement*
SUBJECT ENTERED THE UNITED STATES AT NEW YORK, NEW YORK ON APRIL 18, 1988 AS AN IMMIGRANT.
SUBJECT APPLIED FOR NATURALIZATION BUT NEVER TOOK THE OATH. — *R's objected to this stat.*
SUBJECT WAS CONVICTED IN THE EASTERN DISTRICT OF NEW YORK ON APRIL 7, 1998 FOR THE OFFENSE OF
COUNTERFEIT SECURITIES 18 USC 371.
SUBJECT HAS NO RECORD OF APPEAL OR PETITION PENDING WITH THIS SERVICE.
SUBJECT HAS NO RECORD OF UNITED STATES MILITARY SERVICE.
SUBJECT HAS NO RECORD OF FAMILY TIES IN THE UNITED STATES. — *R's objected to this statement*

AGEN

☐ Continued on attached continuation page                    (Signature and Title)

| DISTRIBUTION | Received (subject and documents) (report of interview) from |
|---|---|
| 2 TO FILE | Officer: MATTHEW A STERMAN / AGENT |
| | 3 / 17  19 99  at  2:00 PM |
| | Disposition  REQUEST NTA AND WA |
| | (Receiving Officer)  Bryan L Mele - SIA |

Form I-213 (Rev. 4/1/9

U.S. Department of Justice

Immigration and Naturalization Service                **Additional Charges of Inadmissibility/Deportability**

In:     ☒ Removal proceedings under section 240 of the Immigration and Nationality Act

        ☐ Deportation proceedings commenced prior to April 1, 1997 under former section 242 of the
        Immigration and Nationality Act

**In the Matter of:**

Alien/Respondent:  WILSON, Gladwin

File No.: A41 928 716  Addr ess:  York County Prison, 3400 Concord Road, York, PA 19533

There is lodged against you the additional charge that you are subject to being taken into custody and
deported or removed from the United States pursuant to the following provision(s) of law:

Section 101(a)(43)(R) of the Immigration and Nationality Act, as amended (the "Act"), is the basis for the
charge under section 237(a)(2)(A)(iii) contained on the Notice to Appear.

In support of the additional charges above there is submitted the following factual allegation(s) ☒ in
addition to ☐ in lieu of the allegations set forth in the original charging document

5.      You were sentenced to more than one year for the conviction alleged at allegation No. 4 on the
        Notice to Appear.

Dated:   7/13/99                      _____

                                      (Signature of Service Counsel)

Form I-261(Rev. 4/1/97)N

dditional allegations (continued):

---

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the charging document and that you are inadmissible or deportable on the charges contained in the charging document. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

---

### Certificate of Service

This charging document was served on the respondent by me on ____ 7/18/99 _____, in the following manner and in
(Date)
compliance with section 239(a)(1)(F) of the Act:

[X] in person     [ ] by certified mail, return receipt requested     [ ] by regular mail
to:  G Edwin Wilson @ Emm. Govt Y.k, PA
(Alien's address)

[ ] The alien was provided oral notice in the _____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____           _____
(Signature of respondent if personally served)           (Signature and title of officer)     Ass't Dist. Counsel

JUL-07-1999  08:48    INS DISTRICT COUNSEL    215 656 7148    P.12/14
immigration      ...on Service                                      Notice to Appear

**In removal proceedings**    .. 240 of the Immigration and Nationality Act

File No: A41 928 716

In the Matter of:

Respondent:   Gladwin        WILSON        INMATE# 47748-053  PRD 6/15/99

LSCI ALLENWOOD, P.O. BOX 1500
WHITE DEER                                          PA    17887        (570) 547-1990
                    (Number, street, city, state and ZIP code)                    (Area code and phone number)

☐ 1. You are an arriving alien.
☐ 2. You are an alien present in the United States who has not been admitted or paroled.
☒ 3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:
You are not a citizen or national of the United States;    *A*

You are a native of Guyana and a citizen of Guyana;    *A*

You were admitted to the United States at New York, New York on or about April 18, 1988 as an Immigrant;    *A*

You were, on April 7, 1998, convicted in the United States District Court at the Eastern District of New York for the offense of the *D*
defendant and others conspired to utter and possess forged and counterfeit securities, in violation of Title 18, United States Code, Section
371.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following
provision(s) of law:

Section 237(a)(2)(A)(iii) of the of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have
been convicted of an aggravated felony as defined in section 101(a)(43) of the Act.    *D*

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐ Section 235(b)(1) order was vacated pursuant to:   ☐  8 CFR 208.30(f)(2)    ☐  8 CFR 235.3(b)(5)(iv)

**YOU ARE ORDERED** to appear before an immigration judge of the United States Department of Justice at:  **IMMIGRATION
COURT, 1600 CALLOWHILL STREET, ROOM 400, PHILADELPHIA, PA 19130**
                                                    (Complete Address of Immigration Court, including Room Number, if any)
on _____TO BE SET_____ at _____TO BE SET_____ to show why you should not be removed from the United States based on the
              (Date)                      (Time)
charge(s) set forth above.

Acting   IHP DIRECTOR
                                                    (Signature and Title of Issuing Officer)

Date:  **APR 0 5 1999**

ALLENWOOD, PA
                                                    (City and State)

**See reverse for important information**

Form I-862 (Rev. 4-1-97)

JUL-07-1999  08:49          INS DISTRICT COUNSEL                215 656 7148    P.13/14
                            reverse for important information

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

---

### Request for Prompt Hearing

To expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appear before an immigration judge.

|  |  |
|---|---|
|  | _____ |
|  | (Signature of Respondent) |

Before:

_____          Date: _____
(Signature and Title of INS Officer)

---

### Certificate of Service

This Notice to Appear was served on the respondent by me on     **APR 0 5 1989**     , in the following manner and in
compliance with section 239(a)(1)(F) of the Act:                        (Date)

☒ in person          ☐ by certified mail, return receipt requested          ☐ by regular mail

☒ Attached is a list of organizations and attorneys which provide free legal services.

☒ The alien was provided oral notice in the _____ **ENGLISH** _____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____                    _____
(Signature of Respondent if Personally Served)          MATTHEW _____ AGENT



SER
AP

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

Weber, Susan M.
2555 Kingston Road, Suite 260,
York, PA 17402-0000

Jeffrey T. Bubier, ADC
3400 Concord Road
York, PA 17402


Name: OMARI, MAHER                          A76-766-772

Type of Proceeding:                         Date of this notice: 10/18/99

Type of Appeal: Case Appeal                 Filed by:  INS

### FILING RECEIPT FOR APPEAL

The Board of Immigration Appeals acknowledges receipt of your appeal and fee or fee
waiver request (where applicable) on 10/15/99 in the above-referenced case.

99 OCT 20 PM 1:33   DEPT. OF JUSTICE

### PLEASE NOTE:

In all future correspondence or filings with the Board, please list the name and alien
registration number ("A" number) of the case (as indicated above), as well as all of the
names and "A" numbers for <u>each</u> family member who is included in this appeal.

<u>Proof of service on the opposing party at the address above is required for ALL
submissions to the Board of Immigration Appeals</u> -- including correspondence, forms,
briefs, motions, and other documents.  If you are the Respondent or Applicant, the
"Opposing Party" is the District Counsel for the INS at the address shown above.  Your
certificate of service must clearly identify the document sent to the opposing party, the
opposing party's name and address, and the date it was sent to them.  <u>Any submission
filed with the Board without a certificate of service on the opposing party will be rejected.</u>

TAYLORL

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB # 1105-0065
**Notice of Appeal to the Board of Immigrat**
**Appeals of Decision of Immigration Judge**

| | | |
|---|---|---|
| **1.** | List Name(s) and "A" Number(s) of all Applicant(s)/Respondent(s):<br><br>OMARI, Maher<br><br>A76 766 772<br><br>**\*\*INS MERITS APPEAL\*\***<br><br>WARNING TO ALL APPLICANT(S)/RESPONDENT(S): Names and "A" Numbers of everyone appealing the order must be written in Item #1 | For Official Use Only |

**2.**   Applicant/Respondent is currently   [X] DETAINED   [ ] NOT DETAINED.

**3.**   Appeal from the Immigration Judge's decision dated  October 8, 1999.

**4.**   State in detail the reason(s) for this appeal. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.

>   WARNING: The failure to specify the factual or legal basis for the appeal may lead to summary dismissal without further notice, unless you give specific details in a timely separate written brief or statement filed with the Board.

**This is a merits appeal by the Immigration and Naturalization Service (the "Service").**

The Service hereby appeals a decision of the Immigration Judge granting the respondent withholding of removal under the Immigration and Nationality Act. The respondent failed to establish that it was more likely than not that he would suffer persecution if returned to Jordan. The background evidence did not support his claim that he would be persecuted because of his sexual relationship with a woman to whom he was not married. He failed to show that he would face harm on account of a protected ground. See, e.g., Matter of R-A-, Interim Decision 3403 (BIA 1999). The harm the respondent fears is a matter of personal revenge. See, e.g., Matter of Maldonado-Cruz, 19 I&N Dec. 509, 512 (BIA 1988); Matter of Y-G-, 20 I&N Dec. 794, 799 (BIA 1994). The respondent did not prove he could not seek the protection of the Jordanian authorities. Additional grounds and issues for appeal may be raised in the Service's appeal brief

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*FEE EXEMPT\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

(Attach more sheets if necessary)

5.  I  ☐ do
       ☒ do not           desire oral argument before the Board of Immigration Appeals.

6.  I  ☒ will
       ☐ will not          file a separate written brief or statement in addition to the "Reasons(s) for
                           Appeal" written above or accompanying this form.

> **!**  **WARNING:** Your appeal may be summarily dismissed if you indicate in Item #6 that you will file a separate written brief or statement and, within the time set for filing, you fail to file the brief or statement and do not reasonably explain such failure.

US Immigration and Naturalization Service

| SIGN HERE → | 7. **X** by _____ | October 1Y, 1999 |
| | Signature of Person Appealing | Date |
| | *(or attorney or representative)* | |

8.                                          9.

| Mailing Address of Applicant(s)/Respondent(s) |
| --- |
| Maher Omari |
| (Name) |
| c/o INS, Snyder County Prison |
| (Street Address) |
| 600 Old Colony Road |
| (Apartment or Room Number) |
| Selingsgrove, PA 17870 |
| (City, State, Zip Code) |

| Mailing Address of Attorney or Representative |
| --- |
| Susan Weber, Esquire |
| (Name) |
| 2555 Kingston Road |
| (Street Address) |
| Suite 260 |
| (Suite or Room Number) |
| York, PA 17402 |
| (City, State, Zip Code) |

> **!**  **WARNING:** An attorney or representative will not be recognized as counsel on appeal and will not receive documents or correspondence in connection with the appeal, unless he/she submits a completed Form EOIR-27.

---

## CERTIFICATE OF SERVICE
### (Must Be Completed)

10.

I   Jeffrey T. Bubier, Assistant District Counsel        mailed or delivered a copy of this notice of appeal
          (Name)

on   October 1Y, 1999                    to   Susan Weber, Esquire
          (Date)                                    (Opposing Party)

at   2555 Kingston Road, Suite 260, York, PA 17402.
          (Address of Opposing Party)

| SIGN HERE → | **X** _____ |
| | Signature of Person Appealing |
| | *(or attorney or representative)* |

# UNITED STATES DEPARTMENT OF JUSTICE
## IMMIGRATION AND NATURALIZATION SERVICE
### ALLENWOOD, PA

## ATTESTATION TO CERTIFICATION OF
## JUDGMENT AND CONVICTION RECORD(S)

In the Matter of:

OMARI  Maher

Alien Number:    A 76 766  772 _____ BOP: _____ 79493-079 _____

I certify that I have reviewed the official Bureau of Prisons inmate record file pertaining
to the above listed person and that this is an authentic copy of the certified Indictment & Judgment
and conviction Record(s) contained in that file.

DECEMBER 15,1998
Date

Signature

DAMIAN  T. STREETZ
Type or Print Name

IMMIGRATION  AGENT

Title

Attachment(s)

AO 245B (3/95) Sheet 1 – Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT

NORTHERN ―――――District of――――― ILLINOIS

UNITED STATES OF AMERICA

**V.**

MAHER OMARI

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

Case Number:   97 CR 460-4

PAUL WAGNER
Defendant's Attorney

## THE DEFENDANT:

[X] pleaded guilty to count(s)  one of the SUPERSEDING indictment

[ ] pleaded nolo contendere to count(s) _____
which was accepted by the court.

[ ] was found guilty on count(s) _____
after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. § 371 | Conspiracy to Defraud the Government | MICHAEL W. ... 1998 | 1 |

A TRUE COPY-ATTEST
MICHAEL W. DOBBINS, CLERK

By_____
DEPUTY CLERK
U. S. DISTRICT COURT, NORTHERN
DISTRICT OF ILLINOIS

DATE:_____ 1998

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ] The defendant has been found not guilty on count(s) _____

[X] COUNT(S)  ALL REMAINING COUNTS  is(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.: 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

Defendant's Date of Birth.: 6 SEPTEMBER 1964

Defendant's USM No.: 79493079

Defendant's Residence Address:

2717 W. Argyle

# B

Chicago, IL  60459

2 October 1998
Date of Imposition of Judgment

_____
Signature of Judicial Officer

GEORGE M. MAROVICH – U.S. District Judge
Name and Title of Judicial Officer

Defendant's Mailing Address:
2717 W. Argyle

# B

Chicago, IL  60459

2 October 1998
Date

AO 245B (3/95) Sheet 2 – Imprisonment

DEFENDANT: OMARI, Maher

CASE NUMBER: 97 CR 460-4

Judgment – Page __2__ of ____6____

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of ___TWENTY (20) MONTHS___ .

[XX] The court makes the following recommendations to the Bureau of Prisons:

Metropolitan Correctional Center, Chicago, IL

[XX] The defendant is remanded to the custody of the United States Marshal.

[ ] The defendant shall surrender to the United States Marshal for this district:

    [ ] at _____ a.m./p.m. on _____ .

    [ ] as notified by the United States Marshal.

[ ] The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    [ ] before 2 p.m. on _____ .

    [ ] as notified by the United States Marshal.

    [ ] as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on ___11/24/08___ to ___ACF___

at ___PA___ , with a certified copy of this judgment.

_____

UNITED STATES MARSHAL

By _____

Deputy U.S. Marshal

AO 245B (3/95)  Sheet 3 – Supervised Rel.

DEFENDANT: OMARI,  Maher

CASE NUMBER:    97 CR 460-4

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of __THREE (3) YEARS__ .

IT IS FURTHER ORDERED, as a special condition of supervised release, that if deported, defendant shall not re-enter the United States without prior permission from the Immigration & Naturalization Service.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and ~~at least two periodic drug tests thereafter, as directed by the probation officer.~~ and up to 104 tests annually.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable.)

☐ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921.  (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (3/95)  Sheet 5, Part A  —  Criminal Penalties

**DEFENDANT:** OMARI, Maher

**CASE NUMBER:** 97 CR 460-4

Judgment – Page __4__ of __6__

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **Totals:** | $ 100.00 | $ | $ 42,000.00 |

☐  If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . $_____

# FINE

The above fine includes costs of incarceration and/or supervision in the amount of $_____ .

The defendant shall pay interest on any fine more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐  The court has determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐  The interest requirement is waived.

    ☐  The interest requirement is modified as follows:

# RESTITUTION

☐  The determination of restitution is deferred in a case brought under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after 09/13/1994, until _____ . An Amended Judgment in a Criminal Case will be entered after such a determination.

☒  The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| **Name of Payee** | **\* Total Amount of Loss** | **Amount of Restitution Ordered** | **Priority Order or Percentage of Payment** |
|---|---|---|---|
| Thomas Faldani<br>BANK OF AMERICA<br>231 S. LaSalle St.<br>Chicago, IL  60697 |  | $42,000.00 |  |
| **Totals:** | $_____ | $ __42,000.00__ |  |

\*  Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994.

AO 245B (3/95) Sheet 5, Part B – Criminal Penalties

**DEFENDANT:** OMARI, Maher

**CASE NUMBER:** 97 CR 460-4

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A ☐ In full immediately; or

B ☐ $ _____ immediately, balance due (in accordance with C, D, or E); or

C ☐ not later than _____ ; or

D ☐ in installments to commence _____ days after the date of this judgment. In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E ☐ in _____ *(e.g., equal, weekly, monthly, quarterly)* installments of $ _____ over a period of _____ year(s) to commence _____ days after the date of this judgment.

The National Fine Center will credit the defendant for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

    Defendant shall participate in the Inmate Financial Responsibility
Program.  Upon release from custody, defendant shall make monthly payments
of $150.00 per month beginning thirty days upon release.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments are to be made to the United States Courts National Fine Center, Administrative Office of the United States Courts, Washington, DC 20544, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program. If the National Fine Center is not operating in this district, all criminal monetary penalty payments are to be made as directed by the court, the probation officer, or the United States attorney.

AO 245B (3/95) Sheet 6 – Statement of Re...

**DEFENDANT:** OMARI, Maher
**CASE NUMBER:** 97 CR 460-4

Judgment – Page ____6____ of ___6___

# STATEMENT OF REASONS

☒ The court adopts the factual findings and guideline application in the presentence report.

## OR

☐ The court adopts the factual finding and guideline application in the presentence report except (see attachment, if necessary):

## Guideline Range Determined by the Court :

Total Offense Level: _____19_____

Criminal History Category: _____I_____

Imprisonment Range: ____30____ to ____37____ months

Supervised Release Range: ____2____ to ____3____ years

Fine Range: $ _100.00_ to $ _250,000.00_

☒ Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution: $ _____

☐ Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

☐ For offenses that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the foreseeable future under any reasonable schedule of payments.

☐ Partial restitution is ordered for the following reason(s):

☐ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

## OR

☒ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reasons:

       see transcript

## OR

☐ The sentence departs from the guideline range:

☐ upon motion of the government, as a result of defendant's substantial assistance.

☐ for the following specific reason(s):

This report may be disclosed
in its entirety.

*J. Danon Rea*

U. S. Probation Officer

# UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | **PRESENTENCE INVESTIGATION REPORT** |
| | ) | |
| OMARI, Maher | ) | Docket No.: 97 CR 460-4 |

---

**Prepared For:**   **The Honorable George M. Marovich**
United States District Court Judge

**Prepared By:**   **Isabelle Dominguez**
U.S. Probation Officer
55 East Monroe - Suite 1500
Chicago, Illinois 60603
(312)435-5770

**Assistant U.S. Attorney**
Vilija A. Bilaisis
219 S. Dearborn
U.S. Courthouse - 5th Floor
Chicago, Illinois 60604
(312)353-3148

**Defense Counsel**
Paul A. Wagner
321 S. Plymouth, Ste. 1500
Chicago, Illinois 60604
(312)413-1145

**Sentence Date:**   October 2, 1998, at 9:00 a.m.

**Offense:**  Count One:  Conspiracy to Defraud the Government (18 USC 371) - Five Years
Incarceration/$250,000 Fine

**Release Status:**   The defendant has been incarcerated in the Metropolitan Correctional Center since
February 9, 1998, subsequent to his arrest on January 8, 1998 in Houston, Texas.

**Detainers:**   None

**Codefendants:**   IYSHEH, Ali (97 CR 460-1):  Pled guilty to Count One of superseding indictment on
January 15, 1998.  Sentencing set for October 2, 1998.

**Date Report Prepared:** June 9, 1998                    **Date Report Revised: September 22, 1998**

ATOOM, Husien (97 CR 460-2):  Pled guilty to Count One of superseding indictment on January 15, 1998.  Sentencing set for October 2, 1998.

NUBANI, Maher (97 460-3):  Pled guilty to Count One of superseding indictment on June 4, 1998.  Sentencing set for October 2, 1998.

RIHANI, Maher (97 CR 460-5):  Pled guilty to Count One of superseding indictment.  Sentencing set for October 2, 1998.

APUZAITOUN, Yousef (97 CR 460-6):  Fugitive.

FARRAJ, Christos (97 CR 460-7):  Pled guilty to Count One of superseding indictment on June 4, 1998.  Sentencing set for October 2, 1998.

**Related Cases:**     None

## Identifying Data:

| | |
|---|---|
| **Date/Place of Birth:** | September 6, 1964/Amman, Jordan |
| **Age:** | 33 |
| **Race:** | White |
| **Sex:** | Male |

| | |
|---|---|
| **SSN No:** | 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 |
| **FBI No:** | 183710PA3 |
| **USM No:** | 79493079 |
| **Other ID No:** | Illinois Driver's License: 056054164254 |

| | |
|---|---|
| **Education:** | Some College |
| **Marital Status:** | Divorced |
| **Dependants:** | None |
| **Citizenship:** | Jordan |

| | |
|---|---|
| **Legal Address:** | 2717 W. Argyle, #B |
| | Chicago, Illinois 60459 |

| | |
|---|---|
| **Aliases:** | Maher A. Omari |
| | Muhir Omari |
| | Maher Adnan Talal Al Omari |

**Optional Photograph**

1

OMARI, Maher
Docket No: 97 CR 460-4

1   PART A.  THE OFFENSE

2   Charge (s) and Conviction (s)

3   On or about June 28, 1997, a felony complaint was filed in the Northern District of Illinois which
4   charged Ali Iysheh and Husien Atoom, with the sale or receipt of stolen motor vehicles; in violation
5   of Title 18, U.S.C. § 2313(a).  On that same date, Defendants Iysheh and Atoom were arrested. (On
6   July 10, 1997, a detention hearing was held on Defendant Atoom before the Honorable Ronald A.
7   Guzman, and was continued).  On January 8, 1998, Maher Omari was arrested in Houston, Texas,
8   was ordered detained, then extradited to Chicago, Illinois, where he was ordered detained at the
9   federal Metropolitan Correctional Center.  On February 9, 1998 the defendant was arraigned on the
10  superseding indictment before Magistrate Judge Martin C. Ashman.    A pretrial report was
11  completed on the defendant and he was tested for illegal substances.  His urinalysis results were
12  negative, and he did cooperate with the pretrial investigator during his interview.  Subsequent to
13  a detention hearing held on February 19, 1998, the defendant was not released on bond, due to the
14  assessment of the Court, that judged the defendant to pose a flight risk.  On June 4, 1998, the
15  defendant pled guilty to Count One of the superseding indictment before The Honorable George M.
16  Marovich.  The cause was referred to the probation office for the completion of the presentence
17  investigation report.  Sentencing was set for October 2, 1998 at 10:00 a.m.

18  On July 23, 1997, a two-count indictment was filed by a Northern District of Illinois Grand Jury,
19  which named Defendants Ali Iysheh, Husien Atoom and Maher Nubani.  Count One charges that
20  from on or about June 26, 1997, and continuing until on or about June 27, 1997, Defendants Iysheh,
21  Atoom and Nubani did conspire with each other and others to commit an offense against the United
22  States; namely to receive, possess, conceal, store and sell motor vehicles which had crossed a state
23  boundary after being stolen; in violation of Title 18, U.S.C.  § 2313(a); all in violation of Title 18
24  U.S.C. § 371.  Count Two charges that on or about June 27, 1997, Defendants Iysheh, Atoom and
25  Nubani did receive, posses, conceal, store and attempt to sell 13 stolen vehicles; in violation of Title
26  18, U.S.C.  § 2313(On July 29, 1997, the defendants were arraigned and pled guilty to the
27  indictment).  On August 1, 1997, the Honorable Ronald A. Guzman granted the government's
28  motion to dismiss the complaint against Defendants Iysheh and Atoom without prejudice.

29  On November 19, 1997, a ten-count superseding indictment was filed by a Northern District of
30  Illinois Grand Jury naming Defendants Ali Iysheh, Husien Atoom, Maher Nubani, Maher Omari,
31  Maher Rihani, Yousef Apuzaitoun, and Christos Farraj.  On that same date, bench warrants were
32  issued for Defendant's Omari, Rihani and Apuzaitoun.  (On November 25, 1997, defendants Iysheh,
33  Atoom, Nubani and Farraj were arraigned before the Honorable Ann C. Williams and pled not guilty
34  to the superseding indictment).  On December 4, 1997, Defendant Rihani was arrested.  On that date,
35  Defendant Rihani was ordered released by bond to be secured by real estate.  Defendant Rihani was

OMARI, Maher
Docket No: 97 CR 460-4

36  actually released on or about December 13, 1997. Conditions of the bond required the defendant
37  unable to travel outside the Northern District of Illinois without prior court approval, report by
38  telephone, weekly, to Pretrial Officer, Sean Mc Clellan.

39  Count One of the superseding indictment charged that from on or about March 28, 1997, through
40  and until July 1997, in the Northern District of Illinois, Eastern Division, and elsewhere, Defendants
41  Rihani, Iysheh, Atoom, Nubani, Omari, Apuzaitoun and Farraj, conspired with each other and others
42  known and unknown to the Grand Jury to knowingly commit offenses against the United States,
43  specifically to defraud a financial institution by means of false and fraudulent pretenses; in violation
44  of Title 18 U.S.C. § 134, to transport in interstate commerce motor vehicles; in violation of Title 18
45  U.S.C. 2312 and to receive possess, conceal, store and sell said vehicles; in violation of Title 18
46  U.S.C.§ 2313(a); all in violation of Title 18 U.S.C. § 371.

47  Count Two of the superceding indictment charged that beginning on or about March 28, 1997, and
48  continuing through and until June 30, 1997, in Chicago, in the Northern District of Illinois, Eastern
49  Division, Defendants Omari, Rihani, Apuzaitoun, and Farraj, did knowingly devise and engage in
50  a scheme to defraud.  Specifically, on or about June 18, 1997, the defendants deposited two
51  fraudulent cashier's checks into the Abita Auto sales account at Liberty Federal Bank;  in violation
52  of Title 18 U.S.C.§ 1344.

53  Count Three of the superceding indictment charged that on or about June 18, 1997, for the purpose
54  of executing the scheme to defraud described in Count Two, in Chicago, in the Northern District
55  of Illinois, Eastern Division, Defendants Rihani, Omari, and Apuzaitoun deposited two forged and
56  fraudulent cashier's checks in the Ten Four Auto Sales bank account at Bank of America; in
57  violation of Title 18 U.S.C. § 1344.

58  Count Four of the superceding indictment charged that on or about June 23, 1997, for the purpose
59  of executing the scheme to defraud described in Count Two, in Chicago, in the Northern District of
60  Illinois, Eastern Division, Defendants Rihani and Omari did deposit a forged and fraudulent cashier's
61  check in the amount of $9,000, into the personal savings account of Yousef Apuzaitoun at the Bank
62  of America; in violation of Title 18 U.S.C. § 1344.

63  Count Five of the superceding indictment charged that beginning on or about March 28, 1997 thru
64  and until June 23, 1997, Defendants Rihani, Omari, Apuzaitoun, and Farraj did knowingly devise
65  a scheme to defraud Metro Milwaukee Auto Auction.  Specifically, on May 20, 1997, in furtherance
66  of the fraud the defendants did cause the placement of a telephone call by Metor Milwaukee Auto
67  Auction to Bank of America;  in violation of Title 18 U.S. C. § 1343.

68  Count Six of the superceding indictment charged that on or about June 16, 1997, for the purpose of
69  executing the scheme to defraud described in Count Two, in Chicago, in the  Northern District of

70    Illinois, Eastern Division and elsewhere, Defendants Rihani, Omari, Farraj, did transmit a facsimile
71    from Liberty Bank in Chicago, Illinois, to Metro Milwaukee Auto Auction, in Caledonia, Wisconsin
72    in furtherance of their scheme to fraudulently obtain used vehicles; all violation of Title 18 U.S.C.
73    § 1343.

74    Count Seven of the supercedingindictment charged that on or about June 18, 1997, for the purpose
75    of executing the scheme to defraud described in Count Two, in Chicago, in the Northern District of
76    Illinois, Eastern Division and elsewhere, Defendants Rihani, Omari and Apuzaitoun, did cause to
77    be transmitted a telephone call from Metro Milwaukee Auto Auction in Caledonia, Wisconsin, to
78    Bank of America in Chicago, Illinois, in furtherance of their scheme to fraudulently obtain used
79    vehicles; all in violation of Title 18 U.S.C. § 1343.

80    Count Eight of the superceding indictment charged that on or about June 18, 1997, at Chicago, in
81    the Northern District of Illinois, and elsewhere, Defendants Rihani, Omari, Farraj, Atoom and
82    Apuzaitoun did transport in interstate commerce from Caledonia, Wisconsin, to Chicago, Illinois
83    four stolen vehicles; in violation of Title 18 U.S.C. § 2312.

84    Count Nine and Ten of the superceding indictment charged that on or about June 18, 1997 to on or
85    about June 27, 1997, at Chicago, in the Northern District of Illinois, and elsewhere, Defendants
86    Rihani, Iysheh, Atoom, Nubani, and Omari did receive, posses, conceal, store, and attempt to sell
87    13 vehicles which had crossed state boundaries, subsequent to being stolen from Metro Milwaukee
88    Auto Auction; all in violation of Title 18 U.S.C. § 2313.

89    Pursuant to the written plea agreement, the defendant agrees he will fully and truthfully cooperate
90    with the government in any matter in which he is called upon to cooperate. The defendant agrees
91    to postpone his sentencing until after the conclusion of the prosecution of this case. At the time of
92    sentencing, the government shall make known to the sentencing judge the extent of the defendant's
93    cooperation, and shall move the Court, pursuant to U.S.S.G. §5K1.1 to depart from the applicable
94    sentencing guidelines range, and to impose the specific sentence agreed to by the parties. The plea
95    agreement is governed, in part, by the Federal Rule of Criminal Procedure 11(e)(1)(C), in that the
96    parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in
97    the custody of the Bureau of Prisons of two-thirds of the low end of the applicable guideline range.
98    After the sentence has been imposed, the government will move to dismiss the remaining counts of
99    the superseding and original indictment which pertain to the defendant.

OMARI, Maher
Docket No: 97 CR 460-4

100    The Offense Conduct

101    The details of the offense were obtained from the attached government's version, plea agreement,
102    defendant's version and the superseding indictment.  The government's version incorporates
103    information obtained from testimony of the cooperating witnesses, testimony of the investigating
104    case agent, and evidence seized during the investigation.  Interviews were also conducted with
105    Special Agent Deborah Jones-Buggs, Federal Bureau of Investigation (FBI), and Assistant United
106    States Attorney Vilija A. Bilaisis.

107    Prior to his participation in the present offense, Maher Omari admits he worked for, owned and
108    operated, several unsuccessful used car dealerships.  Mr. Omari opened these used car dealerships
109    by purchasing used cars with fraudulent business checks.  Although he knew he did not have
110    sufficient funds to cover the amounts written on the fraudulent checks, he hoped to deposit sufficient
111    funds into the accounts after selling the cars he had purchased.  Mr. Omari did not generate sufficient
112    funds to cover his debts, thus he acquired a poor credit rating with several auto auctions, and
113    incurred a significant debt.

114    In or about March of 1997, Maher Omari decided to open a used car dealership called Avita Auto
115    Sales.  Due to his poor credit history based on his prior businesses, Mr. Omari decided to find a
116    partner who had an excellent credit rating, and whom he could convince to open a business under
117    their name.  While frequenting the Stars Coffee Shop, Mr. Omari met Christos Farraj.  Mr. Farraj
118    agreed to allow Mr. Omari to open the business, lease a sales lot, and apply for insurance using his
119    name.

120    According to the government, based on information obtained from Mr. Omari, a few days later, Mr.
121    Omari was approached by Maher Rihani, another patron of the Star Coffee Shop.  Mr. Rihani
122    expressed an interest in becoming a partner in a car dealership with Mr. Omari.  Mr. Rihani told Mr.
123    Omari of a scheme in which he, along with a man named "Joe", would open accounts depositing
124    fraudulent cashier's checks, then withdraw the money through ATM (Automated Teller Machines)
125    or through bank tellers.  Mr Rihani explained to Mr. Omari that he and Joe had successfully stolen
126    merchandise from Sam's Club and defrauded Bank of America using this technique.  According to
127    the government, Mr. Rihani and  Mr. Omari agreed that they would purchase cars at auctions with
128    fraudulent checks, and sell the vehicles.  Mr. Rihani advised Mr. Omari that their profits would be
129    shared with Joe since he was the man with the capability to create the fraudulent cashier's checks.
130    In an interview with Mr. Rihani, the defendant denies the conversation which they reportedly agreed
131    to purchase cars at auctions with fraudulent checks and stated that he did not introduce "Joe" to
132    Omari.  He indicated he knew nothing of Joe's capability of creating fraudulent cashier's checks.

133    According to the government, Defendant Rihani recruited Defendant Apuzaitoun to participate in
134    the scheme, and with Defendant Omari's assistance, directed him to apply for an auto dealership
135    license and insurance, and rent a car lot in the name of Ten Four Auto Sales. Mr. Rihani claims that
136    he was brought into the scheme by Defendant Apuzaitoun.

137    According to the government, Defendants Omari and Rihani directed Defendants Farraj and
138    Apuzaitoun to open personal and business accounts under their names or under the Avita and Ten
139    Four Auto Sales names. Defendants Omari and Rihani assisted Defendant Apuzaitoun in opening
140    accounts at Bank of America, Uptown Bank, and Midtown Bank. Defendant Rihani gave Defendant
141    Apuzaitoun $3,000 with which to open these account, and Defendant Omari assisted Defendant
142    Apuzaitoun in opening the account since he did not speak English very well. In order to make the
143    accounts appear active, fraudulent checks were created, made payable to either Avita or Ten Four
144    Auto Sales, then deposited into the different accounts over the next several months. Mr. Rihani
145    states he did not give $3,000 to Defendant Apuzaitoun to open an account.

146    Defendants Atoom and Nubani approached Defendant Omari with an interest in becoming involved
147    in Avita Auto Sales, and Defendant Atoom agreed to a $5,000 investment. Agent Buggs stated that
148    it is not clear whether Defendants Atoom and Nubani knew that the auto dealership would be dealing
149    in stolen vehicles at this point. However, at some point before or after the purchase of the nine
150    vehicles on June 11, 1997, Defendants Atoom and Nubani were informed the vehicles they would
151    insist on selling were purchased using fraudulent checks. Defendant's Atoom and Nubani also aided
152    in opening accounts under Defendant Farraj's name.

153    During the period of the scheme, Defendant Omari delegated the responsibility of upholding the
154    appearances of everyday business operations on the Avita Auto Sales lot, to his coconspirators. For
155    example, Defendants Farraj and Atoom were asked to stay on the Avita Auto Sales lot and answer
156    telephones, despite the fact that there was not actually any cars being sold directly from that lot.

157    Throughout the scheme Mr. Omari applied for credit with several auto auctions, those being Metro
158    Milwaukee Auto Auction, Dyer Auto Auction, and Rockford Auto Auction. The information
159    included on the applications was comprised of falsely inflated balances in the bank accounts that had
160    been opened by Defendants Farraj and Apuzaitoun. Upon credit approval for the amount of $1,000
161    from Metro Milwaukee Auto Auction, on or about June 11, 1997, Defendants Omari, Rihani, and
162    Apuzaitoun purchased nine vehicles in the name of Ten Four Auto Sales. They left Metro
163    Milwaukee Auto Auction on a gate pass and should have either returned or paid for the vehicles that
164    day. Rather than transport the cars to the Ten Four lot, Defendant Rihani suggested they sell them
165    immediately to friends and relatives. According to the government, Mr. Rihani contacted several
166    potential buyers, sold and traded some of the vehicles. Agent Buggs stated that it was unclear
167    whether some of the vehicles were sold, given in place of money owed, or simply given to
168    individuals with the understanding that they would pay for them. Defendant Rihani stated he never

168  individuals with the understanding that they would pay for them. Defendant Rihani stated he never
169  sold any of the vehicles to any of his friends or his relatives.

170  According to the government's version, per Defendant Omari, on or about June 16, 1997, Defendant
171  Rihani introduced Defendant Omari to "Joe." Defendant Rihani stated he did not know Joe and did
172  not introduce him to Defendant Omari. The government's version indicated Defendant Rihani
173  informed Joe that they would need checks in the amounts of $110,000 and $86,000. The next day,
174  Defendants Omari and Rihani went to Joe's residence, where they witnessed Joe using real cashier's
175  checks in the amount of $86 and $110, to create fraudulent checks in the amount of $86,000 and
176  $110,000 payable to Avita Auto Sales. On June 18, 1997, Joe printed two more checks of the same
177  value, payable to Ten Four Auto Sales. Defendant Rihani denies that he was present when Joe
178  printed the fraudulent checks. On that date, at the direction of Defendants Rihani and Omari,
179  Defendants Atoom, Nubani, and Farraj drove to Liberty Bank and, while Defendants Nubani and
180  Atoom waited in the car, Defendant Farraj entered the bank in an attempt to deposit the fraudulent
181  checks payable to Avita. Defendant Atoom entered the bank a short time after Defendant Farraj.
182  The bank would not accept the checks. At the same time, Defendant Apuzaitoun successfully
183  deposited the two checks payable to Ten Four Auto Sales at Bank of America.

184  According to Ms. Bilaisis, although Defendant Omari claims that he informed Defendants Nubani
185  and Atoom about the fraud, he was not specific on what Defendants Nubani and Atoom knew
186  regarding the fraudulent checks. Ms. Bilaisis related that Defendants Nubani and Atoom maintain
187  that when they accompanied Defendant Farraj to the bank, they were not aware that the two checks
188  were fraudulent. Defendant Atoom stated that he was not aware of the fraudulent checks until he
189  entered the bank after Defendant Farraj, was told that the bank would not deposit the checks, and
190  saw that the checks "looked funny." Ms. Bilaisis stated that although the defendants acknowledged
191  that they later knew about Joe and the fact that he produced the fraudulent checks, she does not have
192  evidence to support the position that Defendants Nubani and Atoom had knowledge of the attempted
193  fraud when they drove with Defendant Farraj to the bank.

194  On June 18, 1997, all the defendants traveled to Metro Milwaukee Auto Auction, for the purpose
195  of purchasing more vehicles, and to pay for the nine vehicles purchased on June 11, 1997.
196  Defendants Rihani and Apuzaitoun provided checks to Metro Milwaukee totaling $137,090 to pay
197  for the nine vehicles. Metro Milwaukee telephoned Bank of America to verify that there was
198  sufficient money to cover the checks. Due to the fraudulent checks the defendants had deposited,
199  thus creating a false balance, Bank of America verified that there was a sufficient balance to cover
200  the checks. Although Metro Milwaukee accepted the check, it would not release the titles until the
201  checks cleared. The defendants purchased four more vehicles that day, valued at $94,910, although
202  they did not have to pay for them on that day.

203   Defendants Omari and Rihani did not want to store the vehicles on their car lots. Defendant Atoom
204   advised Defendant Omari that his friend Ali Iysheh, had a garage in which they could store some of
205   the cars. Defendant Iysheh agreed to store the cars in his garage for a share of the profits once the
206   cars were sold.   Defendant Iysheh arranged for the rental of a lot to store some of the vehicles.
207   Defendant Rihani gave Defendants Nubani, Atoom and Iysheh money to find a larger storage facility
208   to accommodate all the cars that were stolen. Defendant Atoom rented a storage space in his name.

209   Sometime after June 18, 1997, but before June 27, 1997, Joe provided Defendants Omari and Rihani
210   additional fraudulent checks, which they had Defendant Apuzaitoun deposit in various accounts.
211   Defendant Rihani and Joe withdrew the money from the ATMs and shared the proceeds, although
212   Mr. Rihani denies this.

213   During this same period, Defendants Atoom, Nubani and Iysheh were attempting to locate a buyer
214   for the remaining vehicles. According to Agent Buggs, on June 26, 1997, the FBI received
215   information from an automobile dealer regarding individuals attempting to sell stolen vehicles,
216   which resulted in an undercover investigation with an agent posing as a purchaser of automobiles.
217   A deal was made in which the agent agreed to pay a price of $120,000 for the stolen automobiles.
218   Defendants Atoom and Iysheh were arrested on June 28, 1998.

219   According to the government, during this period Defendant Rihani told Defendant Omari that he was
220   making arrangements for Defendant Apuzaitoun to return to Jordan, and they agreed to get
221   Defendant Farraj out of the country, as they did not want him to go to the government regarding the
222   scheme. After learning of Defendant Atoom's arrest, Defendant Omari went into hiding, and
223   Defendant Rihani purchased a ticket for Defendant Farraj to leave the country. Defendant Rihani
224   denies that he made arrangements for Defendant Apuzaitoun to return to Jordan.

225   The total amount of forged checks deposited into the Ten Four Auto Sales and related accounts was
226   $333,200. All the vehicle were recovered and returned to Metro Milwaukee Auto Auction. The total
227   value of the 13 vehicles obtained by fraud was $232,000. Bank of America sustained an actual loss
228   of $42,000 due to the fraudulent checks deposited and withdrawals made.

229   Agent Buggs characterized Defendant Omari as the "ringleader" who brought in Defendants Farraj,
230   Atoom, and Nubani. She characterized Defendant Farraj as the lowest member of the conspirators,
231   she stated that "everyone treated him like a mope," however, she related that Defendant Farraj "knew
232   what was going on." Agent Buggs related that Defendant Atoom confirmed that Defendant Omari
233   verbally threatened Defendant Farraj, but no defendant could confirm Defendant Farraj's claim that
234   Defendant Omari had physically abused him and threatened him with a gun, which Defendant Omari
235   denies. The agent related that it is "very questionable" about how Defendant Rihani becaome
236   involved in the scheme, in that Defendant Omari's version and Defendant Rihani's version are
237   different. The agent stated that she would not fully believe any of the defendants. Agent Buggs

238  states that Defendant Rihani is "covering up" for Joe, claiming he has no information regarding the
239  production of the checks. However, all the defendants indicate that Defendant Rihani has more of
240  a role in this scheme than he admits to, and that all the defendants, including Defendant Rihani knew
241  that "Joe" was producing fraudulent checks. The agent stated Defendant Atoom became involved
242  in an attempt to recover the loss he suffered from Dallas Automobile Dealers which he had operated
243  previously with Defendant Omari. In regards to Defendant Iysheh, the agent related that there is
244  no evidence that he knew about the purchase of the vehicles with fraudulent checks before it was
245  completed. However, the agent stated that it is on tape that he knew the vehicles were stolen once
246  he became involved in storing and selling the vehicles. Agent Buggs stated that it is not clear how
247  much each of the participants expected to receive as their cut of the fraud.

248  In regards to Defendant Rihani's role, Ms. Bilaisis related that all the defendants presented the same
249  picture, that Defendant Rihani was the one with the money, in that he had the fraudulent checks and
250  the connection to Joe, the person who produced the checks. She related that Defendant Rihani is
251  trying to "flip" his role with Defendant Apuzaitoun. Assistant United States Attorney Vilija A.
252  Bilaisis related that although Defendant Omari provided more details regarding Defendant Rihani's
253  role, the other defendant's stories corroborated Defendant Omari's story. Ms. Bilaisis further related
254  that during his cooperation, she has never found Defendant Omari to lie about any part of the
255  offense. She related that she plans on having Defendants Nubani and Omari testify at the sentencing
256  of Defendant Rihani regarding his role. Ms. Bilaisis further related that she did not hold Defendant
257  Rihani responsible for the four vehicles purchased by Avita, as there is no evidence he was involved
258  with Avita Auto Sales. She explained that although he was present at Metro Milwaukee Auto
259  Auction the day the other defendants took possession of the four vehicles for Avita, he was only
260  there to pay for and obtain the titles for the nin automobiles he had purchased the week prior.

261  In regards to the cooperation of Defendants Omari, Atoom, Nubani, Farraj, Agent Buggs related that
262  the defendants provided information about this scheme, and agreed to testify. Agent Buggs further
263  related that without Defendant Omari's cooperation there would have been a "lot more blanks," and
264  Defendant Rihani probably would have gone to trial. She stated that Defendant Rihani has
265  minimized his role and has not provided information on any other participants.

266  <u>Victim Impact</u>

267  The Victim Impact statement, incorporated into the government's version by Assistant United States
268  Attorney William D. Shaver, is attached for the Courts' review.

269  <u>Adjustment for Obstruction of Justice</u>

270  The probation officer has no information to suggest that the defendant impeded or obstructed justice
271  during the investigation or prosecution of this offense.

272    Adjustment for Acceptance of Responsibility

273    The defendant did not discuss his involvement in the present offense upon advice from his attorney,
274    Paul A. Wagner. Although a written version of the defendant's offense conduct has not been
275    received, Mr. Wagner and Mr. Omari agreed that the plea agreement is a complete and accurate
276    account of the defendant's conduct in the present offense. The government agrees that the details
277    in the plea agreement are derived from complete information concerning Mr. Omari's involvement
278    in the instant offense, and credit the defendant with assisting in the prosecution of his co-
279    conspirators. According to Assistant United States Attorney Biliasis, Mr. Omari's testimony and
280    willingness to be a witness, encouraged Mr. Rihani to plead guilty rather than put the government
281    to its burden with a trial. Mr. Omari also pled guilty in a timely fashion. Therefore, a three- level
282    reduction appears appropriate.

283    Offense Level Computations

284    The 1997 edition of the Guidelines Manual has been used in this case.

285    Count One is a conspiracy count which charges three object offenses, as follows: bank fraud, Title
286    18 U.S.C. §1344;   transportation of stolen vehicles, Title 18 U.S.C. §2312; and sale of stolen
287    vehicles, Title 18 U.S.C. §2313. Pursuant to §1B1.2(d), a conviction on a count charging a
288    conspiracy to commit more than one offense shall be treated as if the defendant had been convicted
289    on a separate count of conspiracy for each offense. However, pursuant to §3D1.2(d), Application
290    Note 6, counts are to be grouped together when the offense level is determined largely on the basis
291    of the total amount of harm or loss. Guidelines specifically covered by subsection (d) includes
292    §2B1.1, Theft, and §2F1.1, Fraud. Pursuant to Application Note 6, counts involving offenses to
293    which different offense guidelines apply are grouped together under subsection (d), if the offenses
294    are of the same general type and otherwise meet the criteria for grouping under this subsection. In
295    such cases, the guideline that results in the highest offense level is used. This officer determined that
296    the three counts of conspiracy qualify for grouping under subsection (d). The applicable guideline
297    for the violations of Title 18 U.S.C. §1344, is §2F1.1. The applicable guideline for the violation of
298    Title 18, U.S.C. §2312 and 2313 is §2B1.1. This officer determined the application of each of the
299    guidelines resulted in the same offense level, therefore, either guideline can be utilized.

300    Count I and Stipulated Offenses: -- Conspiracy to Defraud the Government - Bank
301                                      Fraud/Transportation/Sale of Stolen

302        **Base Offense Level:** The United States Sentencing Commission Guideline for
303        violation of Title 18 U.S.C. §371 is found in U.S.S.G. §2X1.1, which states that the
304        base offense level is the offense level, plus any adjustments, from the guideline from

| 305 | the substantive offense. The most applicable guideline for the conspiracy to violate |
| 306 | Title 18 U.S.C. §1344, §2312, and §2313 is §2B1.1, Larceny, Embezzlement and |
| 307 | Other Forms of Theft, which provides a base offense level of four.     4 |

| 308 | **Specific Offense Characteristics:** Pursuant to §2B1.1(b)(1), if the loss exceeded |
| 309 | $100, increase the offense level according to the table provided. Pursuant to § 1B1.3, |
| 310 | Relevant Conduct, in the case of jointly undertaken criminal activity, the offense |
| 311 | level is determined on the basis of all reasonably foreseeable acts and omissions of |
| 312 | others in furtherance of the jointly underataken criminal activity. The evidence |
| 313 | suggests the defendant not only participated jointly in the criminal activity, but also |
| 314 | supervised the activities of the other participants and actually recruited some of the |
| 315 | other participants into the schemes. Originally, 9 vehicles, valued at $137,090 were |
| 316 | fraudulently obtained by the defendant, along with his codefendants, and sold for the |
| 317 | profit of Ten Four Auto Sales. The second set of four cars, also fraudulently |
| 318 | obtained, were valued at $94.910. The value of the 13 vehicles, which were obtained |
| 319 | by fraud, was $231,910, and the total amount of the fraudulent checks deposited for |
| 320 | the scheme was $333,200. The defendant is held accountable for the full value of the |
| 321 | vehicles, as he refined the original fraud scheme, participated in the purchase of all |
| 322 | 13 vehicles, and participated in the attempted sale of all of the vehicles. This officer |
| 323 | also received information from the government and the investigating case agent that |
| 324 | the defendant participated in the above fraudulent activities by helping his partners |
| 325 | open bank accounts in the name of Avita Auto Sales or Ten Four Auto Sales, thus |
| 326 | involving both Liberty Federal Bank and Bank of America in the fraud scheme. The |
| 327 | total loss, intended and foreseeable was $624,110, Therefore, pursuant to |
| 328 | 2B1.1(b)(1)(M), if the loss exceeded $500,000 the base offense level is increased by |
| 329 | twelve.     12 |

| 330 | **Specific Offense Characteristics:** Pursuant to §2B1.1(b)(4)(A), if the offense |
| 331 | involved more than minimal planning, increase by two levels. Pursuant to §1B1.1, |
| 332 | Application Note 1(f), more than minimal planning means more planning than is |
| 333 | typical for commission of the offense in a simple form. Furthermore, it is deemed |
| 334 | present in any case involving repeated acts over a period of time, unless it is clear |
| 335 | that each instance was purely opportune. The offense involved the setting up of two |
| 336 | dealerships, the obtainment of fraudulent cashier's checks to deposit in bank accounts |
| 337 | opened in the name of the dealerships, the fraudulent purchase of the vehicles on two |
| 338 | occasions, the obtainment of lots to store 13 vehicles, and steps taken to sell the |
| 339 | stolen vehicles. Pursuant to §1B1.3, Relevent Conduct, in the case of jointly |
| 340 | undertaken criminal activity, the application of the guidelines, including specific |
| 341 | offense characteristics such as more than minimal planning, is determined on the |
| 342 | basis of all reasonably foreseeable acts and omissions of others in furtherance of the |

343    criminal activity.  The defendant developed the scheme and recruited others to help
344    him refine the scheme and to carry out the scheme.  Therefore, a two- point increase
345    is appropriate.                                                                                                   2

346    **Specific Offense Characteristics:**    Pursuant to §2X1.1(b)(2), if a conspiracy,
347    decrease by three levels, unless the defendant or coconspirators completed all acts
348    believed necessary for the successful completion of the substantive offense.  The
349    defendants did take all the necessary steps to complete the fraud; therefore, there is
350    no decrease in the offense level.                                                                          0

351    **Victim-Related Adjustments:**  None.                                                          0

352    **Adjustments for Role in the Offense:**  The scheme was organized by Defendant
353    Omari, and possibly Defendant Rihani.  The defendant recruited Defendants Farraj,
354    Atoom, and Nubani into the scheme, and partnered with Defendant Rihani and "Joe"
355    to create fraudulent cashier's checks in furtherance of the present offense.  Mr. Omari
356    was involved in all aspects of the present offense.  The evidence suggests, and by Mr.
357    Omari's own admission proves, that he held a supervisory role over at least five
358    participants.  Therefore, pursuant to guideline §3B1.1(a) and §3B1.2, the offense
359    level is increased by four levels.                                                                       4

360    **Adjustments for Obstruction of Justice:**  Pursuant to guideline 3C1.1, Obstructing
361    or Impeding the Administration of Justice, if the defendant willfully obstructed or
362    impeded, or attempted to obstruct or impede, the administration of justice during the
363    investigation, prosecution, or sentencing in the instance offense, the offense level is
364    increased by two levels.  This officer has not received any information to suggest that
365    the defendant did obstruct or impede any judicial process in the instant offense.
366    Therefore, any increase is not warranted.                                                        0

367    **Adjusted Offense Level (Subtotal):**                                                         22

368    **Adjustment for Acceptance of Responsibility:**    The defendant has clearly
369    demonstrated acceptance of responsibility for his offense.   Through his plea
370    agreement, the defendant did admit to the conduct comprising the offense of
371    conviction.  He admits to his role as an organizer and leader in the present offense,
372    and that he should be held accountable for any loss or damages that may have
373    occurred during the commission of the present offense.  He has cooperated with the
374    government by providing complete information concerning his own involvement in
375    the offense in a timely manner, and by notifying authorities of his intention to enter
376    a plea of guilty in a timely manner.  Therefore, the defendant does qualify for a two-

| 377 | level decrease in accordance with guideline 3E1.1(a), Acceptance of Responsibility |
| 378 | and an additional one level decrease pursuant to 3E1.1(b)(1)(2). | <ins>-3</ins> |

| 379 | **Total Offense Level:** | <ins>19</ins> |

| 380 | **Chapter Four Enhancements:** None. | <ins>0</ins> |

| 381 | **Total Offense Level:** | <ins>19</ins> |


382   **PART B. DEFENDANT'S CRIMINAL HISTORY**

383   <u>Juvenile Adjudication (s)</u>

384   The defendant avows he has no juvenile arrest history. Since the defendant was born and reared in
385   Amman, Jordan, it is difficult to verify his statement.

386   <u>Adult Criminal Conviction(s)</u>

| | Date of | | Date Sentence | | |
|---|---|---|---|---|---|
| | <u>Arrest</u> | <u>Conviction/Court</u> | <u>Imposed/Disposition</u> | <u>Guideline</u> | <u>Pnt</u> |
| 389 | 1/30/92 | Count I: Deceptive | 3/20/92: Pled Guilty, | 4A1.1 | 1 |
| 390 | (Age: 27) | Practices, Cook County | Honorable Cyril J. | | |
| | | Circuit Court, Fifth District, | Watson, Six Months | | |
| | | CR#92500085501 | Supervision; | | |
| | | | 09/18/92: Supervision | | |
| | | | Term Discharged, | | |
| | | | Honorable Daniel G. | | |
| | | | Welter | | |

387/388 column headers: "Date of Arrest", "Conviction/Court", "Date Sentence Imposed/Disposition", "Guideline", "Pnt"

391   According to the arrest record, the defendant attempted to steal a pair of shoes from a Sears
392   Department Store by writing a check, the check being written on a Heritage Bank account, for the
393   amount of $88.76, knowing that it would not be paid as such. The check was fraudulent. The
394   defendant was arrested and pled guilty to the above Class A misdemeanor. The defendant agrees
395   with the details contained in the arrest report. He does not deny his involvement in this offense.

OMARI, Maher
Docket No: 97 CR 460-4

| | |
|---|---|
| 396 | Criminal History Computation |

| | |
|---|---|
| 397 | The criminal convictions above result in a subtotal criminal history score of one. The total of the |
| 398 | criminal history points is one. According to the Sentencing Table at U.S.S.G. Chapter 5, Part A, 1 |
| 399 | criminal history point establishes a criminal history category of I. |

| | |
|---|---|
| 400 | PART C. OFFENDER CHARACTERISTICS |

| | |
|---|---|
| 401 | Personal and Family Data |

| | |
|---|---|
| 402 | The following information was gathered through interviews with the defendant. The information |
| 403 | was not corroborated by his family members since this officer was unable to locate them. The |
| 404 | defendant has no family in the state of Illinois. A home visit was not conducted since he nor his |
| 405 | wife, Hindia Abdou, reside at his last listed address. His mother, who did live with him and his |
| 406 | family, moved to California subsequent to the defendant's arrest. The defendant could not provide |
| 407 | this officer with complete information as to familial addresses or complete phone numbers. |

| | |
|---|---|
| 408 | The defendant was born in Amman, Jordan on September 6, 1964 to Adnan Omari and Nabila |
| 409 | Qutshiat. Maher was the second son born, preceded by his brother Manal, and followed by his |
| 410 | younger brother Maiem, his sister Rolan, and the his youngest sister Manor. His father has been a |
| 411 | "Star Marshal" or Chief of the North Side Jordanian Army for over 25 years. His mother has always |
| 412 | been a home maker. Defendant Omair describes his parents as mentally and physically abusive, he |
| 413 | felt "jailed" by his fathers controlling nature. His father, acted as though Maher and his siblings |
| 414 | were soldiers in his army. If the defendant did not accomplish some task he was assigned by his |
| 415 | father or mother, he was punished as a soldier who was insubordinate to his commanding officer. |
| 416 | Mr. Omari's mother was mentally abusive toward her children. The physical and mental abuse |
| 417 | continued throughout his childhood and into his adulthood His parents were divorced in the late |
| 418 | 1980s, and his mother moved to the United States to be near him. |

| | |
|---|---|
| 419 | Mr. Omari related the following information to explain why he immigrated to the United States. By |
| 420 | 1983, the defendant was a Lieutenant in the Jordanian Army Police Force. He was pressured to |
| 421 | pursue a military type of career by his father, and was automatically groomed for such careers in the |
| 422 | Jordanian school system. During his military tenure, the defendant met and fell in love with his |
| 423 | father's third cousin, Iaaiman Omari. The two were strictly forbidden to see each other, and she was |
| 424 | betrothed to another man in her family's village. Mr. Omari wanted to stop the marriage and devised |
| 425 | a scheme to kidnap his beloved. Mr. Omari lied to his military colleagues about an assignment to |
| 426 | track down and arrest a fugitive murderer. The defendant convinced his unit that they must surround |
| 427 | Iaaiman Omari's village, where this murderer was hiding. Mr. Omari implemented his plan on the |
| 428 | day of Ms. Omari's wedding. The defendant was successful in keeping the unsuspecting groom |
| 429 | from re-entering the village, but was not so successful at keeping his father from finding out about |

430   this scheme.  The defendant did not know his father was invited to, and was in attendance for the
431   wedding ceremony.  Consequently, before the defendant could carry out the rest of his plan, his
432   father was advised of the road block and its alleged purpose.  Mr. Omari was taken into custody by
433   his own unit, upon orders from his father, to be incarcerated pending a court marshal.  Defendant
434   Omari's family was dishonored by his actions, and so was Iaaiams' family.  Since many members
435   of the military court feared his father, the court marshal did not find sufficient evidence of
436   misconduct on the defendant's part, and the charges against him were dismissed.  Ms. Omari's
437   family was enraged, and would settle for nothing less than his death.

438   The defendant's father banished him from the family home.  General Omari also threatened his son
439   with death should he attempt to return to their village.  The defendant's commander and friend,
440   aware of the contract on Defendant Omari's life, and the threats made by his father, used his
441   influence to secure permission for the defendant to participate in an educational and training program
442   offered by the United States government.  This agreement would allow Defendant Omari to attend
443   the University of Tennessee at Martin, in Martin, Tennessee.  He would be safely out of the country.

444   In January of 1997, the defendant married Hindia (nee: Abdou).  They share one daughter, Amira.
445   They did share a home in Chicago, Illinois, but since the defendant's arrest, Mrs. Omari has filed
446   for a divorce and moved to Detroit, Michigan.  This information was relayed through Sam Abdou,
447   Hindia Abdou's brother.  Mr. Omari admits that he does not offer any financial support for Amira.

448   It should be noted that despite the defendant's description of his father as abusive and threatening,
449   he advised the pretrial officer compiling his pretrial report, that he visited his father in Jordan in
450   1989.  Without an avenue available to verify Mr. Omari's claims, and given his contradictory
451   statements to his pretrial officer, it is difficult to assess the truthfulness of the above scenario.

452   Physical Condition

453   Maher Omari is a Jordanian male who stands 5'8" tall, and weighs 215 pounds.  He has hazel colored
454   eyes and brown hair.  He reports having no scars or tattoos.  He describes himself as healthy and in
455   excellent physical condition.

456   Mr. Omari advised he has no family history of serious physical ailments or diseases.  He has never
457   sought treatment for, been treated for, or hospitalized for any physical condition.  He has no need
458   for specialized medications or treatment while incarcerated.

459   Mental and Emotional Health

460   The defendant and his family deny any history of mental or emotional health related issues.
461   Defendant Omari denies ever seeking treatment for, or being hospitalized for any mental health

462    issues.   Throughout this officer's interviews with the defendant, he appeared to demonstrate
463    appropriate affect and orientation, and was very articulate.  When asked if he needed an interpreter,
464    he declined.  He appeared to understand the questions asked and there content, giving appropriate
465    answers that were consistent with the context of each question.

466    The defendant is very concerned about further disgracing his family with his involvement in the
467    present offense.  He does admit that his family has been very supportive despite being in different
468    parts of the country.  He denies any need for counseling during this presentence phase.

469    Substance Abuse

470    The defendant denies any history of alcohol or drug abuse within his family, and further denies any
471    personal drug or alcohol use.  He has never taken any prescription medication.

472    Education and Vocational Skills

473    The defendant attended primary and secondary educational institutions in Jordon(verified).  He
474    attended the Jordanian Military Academy, and graduated from the Jordanian Institution of Law
475    (unverified)   His goal was to work security in the private sector, but by Jordanian custom, he was
476    forced to join the Jordanian Army (unverified).

477    In late 1983, early 1984, the defendant attended the University of Tennessee at Martin with
478    permission of the United States Government; the University Military Science program, and the
479    Jordanian Army.  He only participated in one semester of curricula, then dropped out, and absconded
480    from the program, and the Jordanian Military, completely.  He is still considered A.W.O.L.(Away
481    Without Leave) by the Jordanian Army, and knows he will be executed should he ever return to
482    Jordan (unverified).

483    Employment Record

484    The following information has not been verified.  As of this submission, verification of employment
485    information has not been received from the Ford Motor Company.

486    October 1997 to January 1998

487    The defendant alleges he worked with the Ford Motor Company in Detroit, Michigan as a
488    transmission collector, earning $1,800 monthly.

489    Prior to the above employment, Mr. Omari alleges he sold candy on the streets of Chicago, Illinois,
490    and earned an average of $500 monthly.

16

OMARI, Maher
Docket No: 97 CR 460-4

| # | | |
|---|---|---|
| 491 | Financial Condition: Ability to Pay | |
| 492 | **Assets** | 0.00 |
| 493 | **Cash** | |
| 494 | Cash on Hand | 0.00 |
| 495 | Checking Accounts (See Note A) | 575.00 |
| 496 | Savings Account( See Note B) | 0.00 |
| 497 | **Subtotal:** | $575.00 |
| 498 | **Total Assets:** | $575.00 |
| 499 | | |
| 500 | **NET WORTH:** | $575.00 |
| 501 | **Monthly Cash Flow** | 0.00 |
| 502 | **Income** | 0.00 |
| 503 | Defendant's Net Salary | 0.00 |
| 504 | **Total Income:** | $0.00 |
| 505 | **Necessary Monthly Living Expenses** | |
| 506 | | |
| 507 | Credit Card(s)   (American Express Optimum) | 1,000.00 |
| 508 | | |
| 509 | **Total Expenses:** | $1,000.00 |
| 510 | **NET MONTHLY CASH FLOW:** | -$1,000.00 |

511   Note A:  The defendant reported having a checking account with Fidelity Bank in Detroit, Michigan
512   with a balance of $500.00.  He also reported having a savings account with them that has a zero
513   balance (unverified).

514    Note B: The defendant reported having a checking account with Comerca Bank in Detroit, Michigan
515    with a balance of $75.00. His savings account has a zero balance (unverified).

516    Analysis

517    The defendant completed and signed a personal financial statement. It should be noted that as of this
518    submission, the defendant's financial statements have not been verified. Mr. Omari claims no assets.
519    He claims he has no other debts other than the ones listed above, and that the $575.00 he has in his
520    checking and savings accounts is the only money he possesses. Due to Mr. Omari's incarceration
521    in the present offense, he has no income or living expenses. Based on the information provided, the
522    defendant could not make a lump sum payment toward restitution or a fine. Although the defendant
523    is not facing a lengthy period of incarceration, he may still contribute monthly payments up to
524    $500.00 per year towards restitution and/or fine through the Inmate Financial Responsibility
525    Program, with any remaining balance to be paid in equal monthly installments during supervised
526    release.

527    **PART D. SENTENCING OPTIONS**

528    Custody

529    **Statutory Provisions:** The maximum term of imprisonment for Count One is Five years, pursuant
530    to 18 U.S.C. § 371.

531    **Guideline Provisions:** Based on a total offense level of 19 and a criminal history category of I , the
532    guideline range for imprisonment is 30 to 37 months.

533    Impact of the Plea Agreement

534    A written plea agreement, entered into by the defendant and his attorney exists in this case, and a
535    copy is attached to this report. This officer concurs with the guideline calculations contained in the
536    plea agreement. According to the plea agreement, the defendant agrees that he will fully and
537    truthfully cooperate with the government in any matter which he is called upon to cooperate. The
538    defendant agrees to provide complete and truthful information in any investigation and pretrial
539    preparation, and complete and truthful testimony before any grand jury and United States District
540    Court proceeding, and any related civil administration or court proceedings. The defendant agrees
541    to postpone his sentencing until after the conclusion of the prosecutions in which he is called to
542    testify. At the time of sentencing, the government shall make known to the sentencing judge the
543    extent of the defendant's cooperation, and, assuming the defendant's full and truthful cooperation,
544    shall move the Court, pursuant to U.S.S.G. § 5K1.1 and Title 18, United States Code § 3553(e), to
545    depart from the applicable sentencing guidelines range and statutory minimum sentence, and to

18

**OMARI, Maher**
**Docket No: 97 CR 460-4**

546    impose the specific sentence agreed to by the parties as outlined. The plea agreement is governed,
547    in part, by Federal Rule of Criminal Procedure 11(e)(1)(C). That is , the parties have agreed that the
548    sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau
549    of Prisons, and that the term imposed shall be two-thirds of the low end of the applicable guideline
550    range. Other than the agreed upon term of incarceration, the parties have agreed that the Court
551    remains free to impose the sentence it deems appropriate.

552    **Supervised Release**

553    **Statutory Provisions:** If a term of imprisonment is imposed on Count One, the court may impose
554    a term of supervised release of not more than three years, pursuant to 18 U.S.C. §3583(b)(2).

555    **Guideline Provisions:** The guideline range for a term of supervised release is at least two years
556    but not more than three years, pursuant to U.S.S.G. §5D1.2(a)(2). If a sentence of imprisonment of
557    one year or less is imposed, a term of supervised release is not required but is optional, pursuant to
558    U.S.S.G. §5D1.1(b). Supervised release is required if the court imposes a term of imprisonment of
559    more than one year or when required by statute, pursuant to U.S.S.G. §5D1.1(a).

560    Probation

561    **Statutory Provisions:** The defendant is eligible for not less than one nor more than five years
562    probation by statute, pursuant to 18 U.S.C. §3561(b)(1). Because the offense is a felony, one of the
563    following must be imposed as a condition of probation unless extraordinary circumstances exist: a
564    fine, restitution, or community service, pursuant to 18 U.S.C. §3563(a)(2).

565    **Guideline Provisions:** Because the applicable guideline range is in Zone D of the Sentencing
566    Table, the defendant is not eligible for probation, pursuant to U.S.S.G. §5B1.1(a).

567    Fines

568    **Statutory Provisions:** The maximum fine is $250,000, pursuant to 18 U.S.C. §3571(D), which
569    states that any person deriving pecuniary gain from the offense, or if the offense resulted in
570    pecuniary loss to a person other than the defendant, the defendant may be fined not more than
571    $250,000 for a felony offense or not more than the greater of twice the gross gain or twice the gross
572    loss, whichever amount is greater. A special assessment of $100 is mandatory, pursuant to 18 U.S.C.
573    §3013.

574    **Guideline Provisions:** The fine range for the instant offense is from $6,000 to $60,000 pursuant to
575    U.S.S.G. §5E1.2(c)(3).

19

OMARI, Maher
Docket No: 97 CR 460-4

576  Subject to the defendant's ability to pay, the court may include in the fine an amount that is at least
577  sufficient to pay the cost to the government of any imprisonment, probation, or supervised release,
578  pursuant to U.S.S.G. §5E1.2(I).  The most recent advisory from the Administrative Office of the
579  United States Courts, dated March 28, 1997, suggests a monthly cost of $1,910.17 to be used for
580  imprisonment, a monthly cost of $1,186.25 for community confinement, and a monthly cost of
581  $217.18 for supervision.

582  <u>Restitution</u>

583  **Statutory Provisions:**  Pursuant to 18 U.S.C. §3663 and the Mandatory Victim Restitution Act, full
584  restitution must be ordered in this case.  The total loss to Bank of America, located at 200 West
585  Jackson, Attn. Investigation, 8th Floor, Chicago, Illinois, 60606 is $42,000.  Pursuant to 18 U.S.C.
586  §3663, restitution is due immediately.  Any unpaid restitution shall become a condition of probation
587  or supervised release, pursuant to 18 U.S.C. §3663(g).

588  **Guideline Provisions:**  In accordance with the provisions of U.S.S.G. §5E1.1, restitution shall be
589  ordered.

20

OMARI, Maher
Docket No: 97 CR 460-4

590   **FACTORS THAT MAY WARRANT DEPARTURE**

591   Presentation of information in this section does not necessarily constitute a recommendation by the
592   probation officer for a departure.

593   Pursuant to the written plea agreement, at the time of sentencing, the government shall make known
594   to the judge the extent of the defendant's cooperation, and shall move the Court, pursuant to § 5K1.1
595   and 18 U.S.C. § 3553(e), to depart from the applicable sentencing guideline range minimum.  The
596   plea agreement is governed, in part, by the Federal Rule of Criminal Procedure 11(e)(1)(C), in that
597   the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment
598   in the custody of the Bureau of Prisons of two-thirds of the low end of the applicable guideline
599   range.  Other than the agreed term of incarceration, the parties have agreed that the Court remains
600   free to impose the sentence it deems appropriate.

601                                              Respectfully submitted,
602                                              William T. Foster
603                                              Chief U. S. Probation Officer

604                                    by
605                                              Isabelle Dominguez
606                                              U. S. Probation Officer

607   Approved:

608
609   Joe Royston
610   Supervising U. S. Probation Officer

611   ID/id
612                    Attachments:  Government's Version
613                      (Including Victim Impact Statement)
614                    Defendant's Version
615                    Plea Agreement



**U.S. Department of Justice**

*United States Attorney*
*Northern District of Illinois*

---

*Vilija A. Bilaisis*
*Assistant United States Attorney*

*Dirksen Federal Building*
*219 South Dearborn Street, Room 500*
*Chicago, Illinois 60604*

*Direct Line: (312) 353-3148*

August 23, 1999

The Honorable Walter Durling
Executive Office of Immigration Review
Immigration Court
York, Pennsylvania 17402

    Re:  Maher Omari
         A76-766-772

Dear Judge Durling:

    I am writing at the request of Maher Omari, whose immigration case is currently pending before you.  I was the prosecuting attorney in the criminal case entitled <u>United States v. Ali Iysheh et al.</u>, 97 CR 460, brought in the Northern District of Illinois, in which Mr. Omari was charged in all counts of a ten-count indictment with conspiracy to commit bank fraud, transport stolen motor vehicles interstate, and receive, possess, conceal, store, and sell stolen motor vehicles, as well as with bank fraud, wire fraud, interstate transportation of stolen motor vehicles, and receipt, concealment, possession, and storage of stolen motor vehicles, in violation of Title 18, United States Code, Sections 371, 1344, 1343, 2312, and 2313.  Mr. Omari pleaded guilty to the conspiracy count, and agreed to cooperate against his co-defendants.  To that end he was extensively debriefed by FBI agents and myself.  Paragraph 5 of his plea agreement, which I will send under separate cover, reflects these debriefings.  Mr. Omari was never called upon to testify, as his only remaining co-defendant before the Court agreed to plead guilty, due at least in part to Mr. Omari's willingness to testify against him.

    Pursuant to the plea agreement, at Maher Omari's sentencing the government moved the Court to depart from the sentencing guidelines range and to impose an agreed sentence of two-thirds of the low end of the sentencing guidelines range.  The government also moved to dismiss the remaining counts of the indictment.  The Court granted the government's motions.

    The last defendant in case 97 CR 460, Yousef Apuzaitoun,

remains a fugitive.  Mr. Omari has expressed his willingness to
continue to cooperate and to testify against Mr. Apuzaitoun if and
when he is apprehended.

                            Very truly yours,

                            SCOTT R. LASSAR
                            United States Attorney

                    By:    *Vilija A. Bilaisis*

                            VILIJA A. BILAISIS
                            Assistant United States Attorney


cc:  Maureen Gaffney, INS Trial Attorney
     Paul Wagner, Attorney for Maher Omari

U. S. Department of Justice
Immigration and Naturalization Service

# Notice of Referral to Immigration Judge

| | | |
|---|---|---|
| | **Date** | 7/26/99 |
| | **A-File** | 76766772 |
| **Name**  OMARI, Maher | **Country of Citizenship** | Jordan |
| **Place and Manner of Arrival**  NYC, by air | **Date of Arrival** | 10/17/89 |

**To immigration judge:**

☐ 1. The above-named alien has been found inadmissible to the United States and ordered removed pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act). A copy of the removal order is attached. The alien has requested asylum and/or protection under the Convention against Torture and the matter has been reviewed by an asylum officer who has concluded the alien does not have a credible fear of persecution or torture. The alien has requested a review of that determination in accordance with section 235(b)(1)(B)(iii)(III) of the Act and 8 C.F.R. §§ 208.30(e) and (f).

☐ 2. The above-named alien arrived in the United States as a stowaway and has been ordered removed pursuant to section 235(a)(2) of the Act. The alien has requested asylum and/or withholding of removal under the Convention against Torture and the matter has been reviewed by an asylum officer who has concluded the alien does not have a credible fear of persecution or torture. The alien has requested a review of that determination in accordance with section 235(b)(1)(B)(iii)(III) of the Act.

☐ 3. The above-named alien arrived in the United States in the manner described below and has requested asylum and/or withholding of removal under the Convention against Torture. The matter is referred for a determination in accordance with 8 CFR 208.2(b). Arrival category (check one):

☐ Crewmember/applicant      ☐ Crewmember/refused      ☐ Crewmember/landed
☐ Crewmember/violator      ☐ VWPP/applicant      ☐ VWPP/violator
☐ 235(c) order      ☐ S-visa nonimmigrant      ☐ Stowaway: credible fear determination attached

☐ 4. The above-named alien has been ordered removed by an immigration officer pursuant to section 235(b)(1) of the Act. A copy of the removal order is attached. In accordance with section 235(b)(1)(C) of the Act, the matter is referred for review of that order. The above-named alien claims to be (check one):

☐ a United States citizen      ☐ a lawful permanent resident alien
☐ an alien granted refugee status under section 207 of the Act      ☐ an alien granted asylum under section 208 of the Act

☐ 5. The above-named alien has been ordered removed pursuant to section 238(b) of the Act, or the INS has reinstated a prior exclusion, deportation, or removal order of the above-named alien pursuant to section 241(a)(5) of the Act. A copy of the removal order and, if applicable, the notice of reinstatement, are attached. The alien has expressed fear of persecution or torture and the claim has been reviewed by an asylum officer who has concluded the alien **does not** have a reasonable fear of persecution or torture. The alien has requested a review of that determination in accordance with 8 C.F.R. §§ 208.31(f) and (g).

☑ 6. The above-named alien has been ordered removed pursuant to section 238(b) of the Act, or the INS has reinstated a prior exclusion, deportation, or removal order of the above-named alien pursuant to section 241(a)(5) of the Act. A copy of the removal order and, if applicable, the notice of reinstatement, are attached. The alien has expressed fear of persecution or torture and the claim has been reviewed by an asylum officer who has concluded the alien **has** a reasonable fear of persecution or torture. The matter has been referred for a determination in accordance with 8 C.F.R. 208.31(e).

RECEIVED
DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
YORK, PENNSYLVANIA
99 JUL 29 AM 9:43

Form I-863 (rev. 3/22/99)N

U.S. Department of Justice
Immigration and Naturalization Service

**Final Administrative Removal Order**

## FINAL ADMINISTRATIVE REMOVAL ORDER
## UNDER SECTION 238(b) OF THE
## IMMIGRATION AND NATIONALITY ACT

BOP No.:  79493079
File No:  076766772
Date:

To:  OMARI, Maher
Address:  BOP Allenwood Low Fci,  LSCI-ALLENWOOD PO BOX 1500 WHITE DEER PA 17887
(Number, street, city, state and ZIP code)

Telephone:  N/A
(Area code and phone number)

## ORDER

Based upon the allegations set forth in the Notice of Intent to Issue a Final Administrative Removal Order and evidence contained in the administrative record, I, the undersigned Deciding Service Officer of the Immigration and Naturalization Service, make the following findings of fact and conclusions of law.  I find that you are not a citizen or national of the United States and that you were not lawfully admitted for permanent residence.  I further find that you have a final conviction of an aggravated felony as defined in section 101(a)(43) of the Act, 8 U.S.C. 1101(a)(43), and are ineligible for any relief from removal that the Attorney General may grant in an exercise of discretion.  I further find that the administrative record established by clear, convincing, and unequivocal evidence that you are deportable as an alien convicted of an aggravated felony pursuant to section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. 1227(a)(2)(A)(iii).  By the power and authority vested in the Attorney General and in me as the Attorney General's delegate under the laws of the United States, I find you deportable as charged and order that you be removed from the United States to
_____ or to any alternate country prescribed in section 241 of the Act.

(Signature of Authorized INS Official)

District Director
(Title of official)

Philadelphia, PA       5-4-99
(Date and office location)

Petition for review:  ☐ Waived by respondent.
☐ Reserved by respondent.

### Certificate of Service

I served this FINAL ADMINISTRATIVE REMOVAL ORDER upon the above named individual.

5/10/99   0830      Allenwood, PA;    Personal Service
(Date, time, place and manner of service)

D. Bunks
for  STREETZ, Damian  IHP Officer
(Signature and title of officer)

Form I-851A(Rev. 4/1/97)N

**Attachment to Final Administrative Removal Order (I-851A)**

Re: A 76 766 772   Maher OMARI

I have considered all the information related to the Administrative Removal proceedings in your case. You have submitted a written response to the Notice of Intent to Issue a Final Administrative Removal Order within the time required.  The Notice of Intent was personally served on January 26, 1999, and your response was due within 30 calendar days of service of extension dated February 3, 1999.

You have requested that the Notice of Intent to Issue a Final Administrative Removal Order be withdrawn so that you may pursue a waiver under section 212(h) of the Immigration and Nationality Act (hereinafter "INA") and adjustment of status before the Immigration Judge.  Pursuant to section 238(b)(5) of the INA, *"[n]o alien described [in section 238] shall be eligible for any relief* from removal that the Attorney General may grant in the Attorney General's *discretion."*  8 U.S.C., Section 1228(b)(5) (1997)(emphasis added).  Inasmuch as a waiver under section212(h) of the INA is a discretionary form of relief, you are statutorily ineligible to apply for and receive such a waiver. In addition, it should be noted that you failed to present evidence establishing that you are the beneficiary of an approved alien relative petition, thus failing to demonstrate prima facia eligibility for adjustment of status under section 245 of the INA.

In recognizing your request for relief under the Convention Against Torture Act and section 241(b)(3)(B) of the INA [restriction on removal], your case will be referred to an Asylum Officer for adjudication of your claim.  Nevertheless, I find that your alienage and the charge of removability under section 237(a)(2)(A)(iii) of the INA have been sustained by clear, convincing and unequivocal evidence. Accordingly, this Administrative Order is deemed to be final.

U.S. Department of Justice

Immigration and Naturalization Service

**Record of Deportable/Inadmissible Alien**



| Family Name (CAPS)          First          Middle | Sex | Hair | Eyes | Complexion |
|---|---|---|---|---|
| OMARI, MAHER | Male | BLACK | BROWN | MEDIUM |

| Country of Citizenship | Passport Number and Country of Issue | File Number | Height | Weight | Occupation |
|---|---|---|---|---|---|
| JORDAN | | 076766772 | 5'8" | 250 Lbs | See #1 |

| U.S. Address | Scars and Marks |
|---|---|
| BOP Allenwood Low Fci, LSCI-ALLENWOOD WHITE DEER PA | None Visible |

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F.B.I Number | |
|---|---|---|---|
| 10/17/1989 See #2 | | 183710PA3 | ☐ Single  ☐ Divorced  ☒ Married  ☐ Widow(er)  ☐ Separate |

| Number, Street, City, Province (State) and Country of Permanent Residence | Method of Location/Apprehension |
|---|---|
| 622 WEST BRENTWOOD ST. DETROIT MI US 48203 | |

| Date of Birth | Date of Action | Location Code | (At/Near) | Date & Hour |
|---|---|---|---|---|
| 9/6/1964 | 1/19/1999 | ALLENWOOD PA | ALLENWOOD PA | 1/19/1999 |

| City, Province (State) and Country of Birth | AR | Form (Type & No.) | By |
|---|---|---|---|
| AMMAN JORDAN | ☐ | ☐ Lifted  ☐ Not Lifted | STREETZ, Damian |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|
| | | Non-Immigrant | I - Incarcerated |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|
| | 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 | |

| Immigration Record | Criminal Record |
|---|---|
| | SEE NARRATIVE |

| Name, Address, and Nationality of Spouse (Maiden name, if Appropriate) | Number & Nationality of Minor Children |
|---|---|
| OMARI, Hindia Abdou | Children |

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|
| OMARI, Adnan JORDAN | QUTSHIAT, Nabila JORDAN |

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted | INS Systems Checks | Charge Code Word(s) |
|---|---|---|---|
| | ☒ Yes  ☐ No | CIS SENTRY | |

| Name and Address of (Last) (Current) U.S. Employer | Type of Employment | Salary | Employed From:    To: |
|---|---|---|---|
| | | $          hr. | |

Narrative (Outline particulars under which alien located/apprehended. Include details, not shown above, re: time, place, manner of last entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior).

BOP# 79493079    PRD: 6-22-99

AKA: TALAL AL OMARI, Maher Adnan OMARI, Muhir OMARI, Maher A

1) CONVICTION: 10/2/1998 NORTH. DIST., ILLINOIS, 21 USC 846 SEC 841-851

IMMIGRATION RECORD:
Subject was admitted to the United States as an non-immigrant.
CRIMINAL RECORD:
On October 2,1998, Subject was convicted in the United States District Court at the Northern District of Illinois for the offense of Conspiracy to defraud the Government in violation of Title 18, United States code, section 371.
Subject was sentenced to TWENTY(20) Months confinement.
Subject has no U.S. military service or benefits pending.
Subject has family ties to the U.S.
Subject has an appeal filed for the reduction of sentence not for his conviction.
Subject has no lawyer at this time.

| Alien has been advised of communication privileges | | STREETZ, Damian          IHP Officer |
|---|---|---|
| | (Date/Initials) | (Signature and Title of INS Official) |

| Distribution: | Received (Subject and Documents) (Report of Interview) |
|---|---|
| | Officer:  STREETZ, Damian  IHP Officer |
| | on:    1/19/1999    at   10:43:40 AM (time) |
| | Disposition:  AR |
| | Examining Officer:  Bryan L. Mille  SFA |

Form I-213(Rev. 4-1-

**U.S. Department of Justice**
Immigration and Naturalization Service

**Continuation Page for Form   I-213**

| Alien's Name | File Number | BOP Number | Date |
|---|---|---|---|
| OMARI, Maher | 076766772 | 79493079 | |

From #1
Occupation Not Reported

From #2
CHICAGO-O'HARE INTERNATIONAL AIRPORT, CHICAGO IL PLANE

| Signature | Title |
|---|---|
| | IHP Officer |

Form I-831 Continuation Page (Rev. 6/12/92)

U.S. Department of Justice
Immigration and Naturalization Service

**Warrant of Removal/Deportation**

File No: A37 647 503

Date: 01-05-00

**To any officer of the United States Immigration and Naturalization Service:**

Celio Enrique          DELACRUZ-Tarjeda

(Full name of alien)

who entered the United States at _____ New York, N.Y. _____ on _____ April 17, 1983 _____

(Place of entry)                                        (Date of entry)

is subject to removal/deportation from the United States, based upon a final order by:

☐ an immigration judge in exclusion, deportation or removal proceedings
☐ a district director or a district director's designated official
☒ the Board of Immigration Appeals
☐ a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:

Section(s): 237(a)(2)(A)(iii)
           237(a)(2)(B)(i)

I, the undersigned officer of the United States, by virtue of the power and authority vested in the Attorney General under the laws of the United States and by his or her direction, command you to take into custody and remove from the United States the above-named alien, pursuant to law, at the expense of:

the appropriation, "Salaries and Expenses Immigration and Naturalization Service 2000," including the expense of an attendant if necessary.

_____
(Signature of INS official)

**Acting District Director**
(Title of INS official)

01-05-00/Philadelphia, Pa.
(Date and office location)

Form I-205 (Rev. 4-1-97) N

To be completed by Service officer executing the warrant:

Name of alien being removed:

Celio Enrique                    DELACRUZ-Tarjeda

Port, date, and manner of removal:    New York, NY (JFK); February 10, 2000; American 635



Photograph of alien
removed



Right index fingerprint
of alien removed

_____
(Signature of alien being fingerprinted)

_____    INS.
(Signature and title of INS official taking print)

Departure witnessed by: _____
(Signature and title of INS official)

If actual departure is not witnessed, fully identify source or means of verification of departure:

_____

_____

_____

If self-removal (self-deportation), pursuant to 8 CFR 241.7, check here.  ☐

Departure Verified by: _____
(Signature and title of INS official)

Form I-205 (Rev. 4-

**U.S. Department of Justice**
Immigration and Naturalization Service                    **Warning to Alien Ordered Removed or Deported**

File No: A37 647 503

Date: 01-05-00

Celio Enrique                    DELACRUZ-Tarjeda
Alien's full name: _____

In accordance with the provisions of section 212(a)(9) of the Immigration and Nationality Act (Act), you are prohibited from entering, attempting to enter, or being in the United States:

☐ For a period of 5 years from the date of your departure from the United States because you have been found deportable under section 237 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act initiated upon your arrival in the United States as a returning lawful permanent resident.

☐ For a period of 10 years from the date of your departure from the United States because you have been found:
  ☐ deportable under section 237 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.
  ☐ inadmissible under section 212 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act initiated as a result of your having been present in the United States without admission or parole.
  ☐ deportable under section 241 of the Act and ordered deported from the United States by an immigration judge in proceedings commenced before April 1, 1997 under section 242 of the Act.
  ☐ deportable under section 237 of the Act and ordered removed from the United States in accordance with section 238 of the Act by a judge of a United States district court, or a magistrate of a United States magistrate court.

☐ For a period of 20 years from the date of your departure from the United States because, after having been previously excluded, deported, or removed from the United States, you have been found:
  ☐ inadmissible under section 212 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.
  ☐ deportable under section 237 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.
  ☐ deportable under section 237 of the Act and ordered removed from the United States in proceedings under section 238 of the Act.
  ☐ deportable under section 241 of the Act and ordered deported from the United States by an immigration judge in proceedings commenced before April 1, 1997 under section 242 of the Act.
  ☐ to have reentered the United States illegally and have had the prior order reinstated under section 241(a)(5) of the Act.

☐ At any time because you have been found inadmissible or excludable under section 212 of the Act, or deportable under section 241 or 237 of the Act, and ordered deported or removed from the United States, and you have been convicted of a crime designated as an aggravated felony.

After your removal has been effected you must request and obtain permission from the Attorney General to reapply for admission to the United States during the period indicated. You must obtain such permission before commencing your travel to the United States. Application forms for requesting permission to reapply for admission may be obtained by contacting any United States Consulate or office of the Immigration and Naturalization Service. Refer to the above file number when requesting forms or information.

**WARNING: Title 8 United States Code, Section 1326 provides that it is a crime for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States without the Attorney General's express consent. Any alien who violates this section of law is subject to prosecution for a felony. Depending on the circumstances of the removal, conviction could result in a sentence of imprisonment for a period of from 2 to 20 years and/or a fine of up to $250,000.**

_____          _____          _____
(Signature of officer serving warning)          (Title of Officer)          (Location of INS office)

Form I-294 (Rev. 6-1-9



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

To ALW

5201 Leesburg Pike, Suite 1300
Falls Church, Virginia 22041

*S-DELACRUZ-TARJEDA, CELIO ENRIQUE
LSCI ALLENWOOD, P.O. BOX 1500
WHITE DEER,  PA  17887-0000

Office of the District Counsel/PHI
1600 Callowhill St., Room 530
Philadelphia, PA  19130

Name: *S-DELACRUZ-TARJEDA, CELIO ENRIQUE          A37-647-503

<u>Date</u> of this notice: 11/23/1999

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Very Truly Yours,

Paul W. Schmidt
Chairman

Enclosure

Panel Members:
ROSENBERG, LORY D.
VACCA, FRED W.
VILLAGELIU, GUS

RECEIVED

DEC 2 7 1999

ALLENWOOD INS

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:   A37 647 503 - Philadelphia

Date:   **NOV 2 3 1999**

In re:   CELIO ENRIQUE <u>DELACRUZ</u>-TARJEDA a.k.a. Celio Delacruz a.k.a. Celio Enrique Delacruz-Tejeda

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Pro se

CHARGE:

Notice:   Sec. 237(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(iii)] -
Convicted of aggravated felony

Sec. 237(a)(2)(B)(i), I&N Act [8 U.S.C. § 1227(a)(2)(B)(i)] -
Convicted of controlled substance violation

ORDER:

PER CURIAM.  The decision of the Immigration Judge dated May 25, 1999, finding the respondent removable under sections 237(a)(2)(A)(iii) and (a)(2)(B)(i) of the Immigration and Nationality Act, 8 U.S.C. §§ 1227(a)(2)(A)(iii) and (a)(2)(B)(i), determining that the respondent was not eligible for any relief from removal, and ordering that he be removed to the Dominican Republic, is affirmed.  The request for oral argument is denied.

On appeal, the respondent contends that the Immigration Judge erred in denying him an opportunity to retain counsel.

We find no merit in the respondent's appeal.  The respondent was granted two continuances over the course of 3½ months to find an attorney.  We are satisfied that the respondent's right to obtain counsel was complied with and that his removal hearing was fair.  <u>See Matter of Santos</u>, 19 I&N Dec. 105 (BIA 1984); <u>Matter of Gutierrez</u>, 16 I&N Dec. 226 (BIA 1977).  We further note that the respondent has failed to establish that the presence of counsel would have changed the outcome of his case.  <u>See Villanueva-Jurado v. INS</u>, 482 F.2d 886, 888 (5th Cir. 1973).

We also find that the respondent is statutorily ineligible for cancellation of removal pursuant to section 240A(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a), because he has been convicted of an aggravated felony as defined in section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43).  Since he is in removal proceedings, a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c), is not a form of relief that is available.  <u>See</u> section 304(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 ("IIRIRA").

· A37 647 503

The respondent argues on appeal that the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, violates the Constitution because of its retroactive effect. We cannot rule on the constitutionality of laws enacted by Congress. See, e.g., Matter of Fuentes-Campos, Interim Decision 3318 (BIA 1997); Matter of C-, 20 I&N Dec. 529 (BIA 1992). Furthermore, we note that the provisions of AEDPA do not apply to the respondent as his removal proceeding is governed by the IIRIRA.

Accordingly, the appeal is dismissed.

FOR THE BOARD

2



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

_____

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*


**Kascavage, Martin A., Esquire**                    **Office of the District Counsel/PHI**
**400 Market Street, Suite 420,**                     **1600 Callowhill St., Room 530**
**Philadelphia, PA 19106-0000**                       **Philadelphia, PA 19130**


Name: *S-SALEH, SHERIF KAMEL (09/1999)              A29-734-408

Type of Proceeding: Removal                          Date of this notice: 11/16/1999

Type of Appeal: Case Appeal                          Appeal filed by: Alien

### NOTICE -- BRIEFING SCHEDULE

- o  Enclosed is a copy of the decision of the Immigration Judge.
- o  Enclosed is a copy of the transcript of the testimony of record.
- o  Appealing party is granted until 12/16/1999 to submit a brief to the Board of Immigration Appeals. The brief must be **RECEIVED** at the Board on or before this date.

- o  Opposing party is granted until 1/16/2000 to submit a reply brief to the Board of Immigration Appeals . The brief must be **RECEIVED** at the Board on or before this date.

- o

**FILING INSTRUCTIONS -- In General.**

**IMPORTANT: The Board of Immigration Appeals has included two copies of this notice. Please attach one copy of this notice to the front of your brief when you mail or deliver it to the Board, and keep one for records. Thank you for your cooperation.**

Your appeal must be RECEIVED at the Clerk's Office at the Board of Immigration Appeals within the prescribed time limits. It is NOT sufficient simply to mail the appeal and assume your appeal will arrive on time. We strongly urge the use of an overnight courier service to ensure the timely filing of your appeal.

Use of an over-night courier service is strongly encouraged to ensure timely filing.

If the alien is represented by counsel at the appeal level, a Notice of Entry of Appearance as Attorney or Representative before the Board of Immigration Appeals (Form EOIR-27) must be filed with the Board.

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
PHILADELPHIA, PENNSYLVANIA


File No.:      A 29 734 408

In the Matter of                )
                                )
SHERIF KAMEL SALEH,             )
                                )    IN REMOVAL PROCEEDINGS
            Respondent          )

CHARGE:

APPLICATIONS:


ON BEHALF OF RESPONDENT:        ON BEHALF OF THE SERVICE:

Martin Kascavage, Esquire       Tamara Gureghian, Esquire


WRITTEN DECISION OF THE IMMIGRATION JUDGE

On October 6, 1998, the Immigration and Naturalization
Service issued Form I-862, Notice to Appear in the name of the
respondent, Sherif Saleh, A 29 734 408.  In the Notice to Appear
it is alleged that the respondent is not a citizen or national of
the United States, that he is a native and citizen of Egypt, that
he entered the United States on or about June 17, 1984 as a non-
immigrant visitor for pleasure, that on June 13, 1990, his status
was adjusted to that of a conditional permanent resident and that
on August 31, 1992 his status was adjusted to that of a lawful
permanent resident, that on February 6, 1998 he was convicted in
the United States District Court, Eastern District of

AMB

Pennsylvania for the offense of unlawful possession of a destructive device in violation of Title 26 U.S.C. Section 5861(d). It is further alleged that the respondent is therefore removable from the United States under the provision of law, Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, in that that any time after admission he has been convicted of an aggravated felony as defined in Section 101(a)(43)(E) of the Act, a law relating to firearm offenses.

At a master calendar appearance the respondent, through counsel admitted the factual allegations 1 through 6 and denied the charge of removability. The respondent's counsel argues that the respondent's conviction does not fall within the definition of a firearm offense as contemplated by Section 5861 of the Internal Revenue Code of 1986.

In evidence are Exhibit 1, the Notice to Appear, Exhibit 2, Government submission of evidence which is a Form I-213, record of deportable alien, and a record of conviction in the underlying matter, which shows that the respondent entered a guilty plea to Title 26 U.S.C. Section 5861(d), unlawful possession of a destructive device on February 6, 1998 and for that offense he was sentenced to a period of 22 months incarceration. Exhibit 3 is a copy of a presentence report and a copy of Title 26 U.S.C. Section 5861. Exhibit 4 is a copy of the definition of firearm at Section 5845 of Title 26. And Exhibit 5 is the respondent's motion to terminate removal proceedings, including a brief by the

A 29 734 408                          2

AMB

respondent's counsel arguing the merits of their motion to terminate.

The Court finds by evidence that is clear, convincing and unequivocal that the Government has met its burden of establishing removability in this case.  Namely, the Court concludes that the conviction for which the respondent plead guilty does fall within the definition of 101(a)(43)(E) of aggravated felony under subsection (3) "Section 5861" of the Internal Revenue Code of 1986 (relating to firearms offenses).

First, the Court notes that the respondent did plead guilty to 5861, subsection (d) of Title 26.  Subsection (d) refers to "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record".  Turning to the definition of firearm, Title 26 incorporates its own definition of firearm as the record shows at Exhibit 4, Section 5845, which indicates "for the purpose of the chapter" and then under subheading (a) firearm Section 8, a destructive device.

It appears clear on its face that the law to which the respondent entered a guilty plea, which is namely Title 26 violations of the Internal Revenue Code wherein, it includes its own definition at Section 5845 of a firearm, has encompassed such offenses as that to which the respondent entered a plea of guilty.  The Court therefore must find that the respondent is removable as charged.  Given that the respondent is an aggravated

A 29 734 408                              3

AMB

felon he is not entitled to consideration under cancellation of
removal or voluntary departure.  Given that he is a lawful
permanent resident he cannot be considered for a waiver under
Section 212(h) of the Act, and he has not evidenced any fear of
return to Egypt or any fear of torture, therefore, the Court must
conclude that the respondent is not eligible for any relief from
removal and will enter an order of removal in this case to Egypt.


DATED: _____10-5-99_____          _____
                                  PAUL GRUSSENDORF
                                  Immigration Judge


A 29 734 408                      4

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision ● Board of Immigration Appeals

Falls Church, Virginia 22041

File: A29 734 408 - Whitedeer                    Date:        AUG 11 1999

In re:  SHERIF KAMEL SALEH

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    Martin A. Kascavage, Esquire
                             Schoener & Kascavage, P.C.
                             400 Market Street, Suite 420
                             Philadelphia, Pennsylvania  19106

CHARGE:

    Notice:  Sec.    237(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(iii)] -
                     Convicted of aggravated felony


    On March 31, 1999, the Immigration Judge found the respondent removable from the United
States.[1]  The respondent has appealed the Immigration Judge's decision.  The request for a
waiver of the appeal fee is granted.  See 8 C.F.R. § 3.8(c) (1998).

    While the Immigration Judge issued an order of removal that indicates it is a summary of an
oral decision, that decision is not in the record.  The decision of the Immigration Judge may be
either oral or written.  However, even a transcribed oral decision must include a finding as to
deportability, provide the reasons for granting or denying any request, and end with the
Immigration Judge's order.  In addition, the transcribed oral decision must be separate from the
remainder of the transcript.  See 8 C.F.R. § 240.12(a) (1999); Matter of A-P-, Interim Decision
3375, 12-13 (BIA 1999).  In this case, there is no oral decision.

    Alternatively, if the Immigration Judge intended this decision to be a summary decision, it
would not be proper in this case.  A summary decision may only be issued by an Immigration
Judge in removal proceedings in lieu of a separate written or transcribed oral decision when the
respondent has expressly admitted to both the factual allegations and the charges of removability
and, either (1) the respondent's ineligibility for any form of relief is clearly established on the
pleadings, or (2) the respondent chooses not to apply for any form of relief for which it appears
he/she may be eligible, after being given an appropriate advisement and an opportunity to do so,
or (3) the respondent only applies for, and is granted, the relief of voluntary departure.

---

[1]  The Immigration Judge indicated at the March 3, 1999, hearing that the hearing was being
reset to March 31, 1999, for preparation of a written decision.  See Tr. at 11.  However, there
is no transcript of any hearing on that date; nor is there a written decision in the record.  There
is only an Order of the Immigration Judge.

A29 734 408

Otherwise, a full decision is needed to provide the factual and legal basis for the decision. <u>See</u> 8 C.F.R. §§ 240.12(a), (b) (1999);[2] <u>Matter of A-P-</u>, <u>supra</u>, at 4-11. Because the respondent denied the charge concerning removability, a summary decision is not appropriate in the present case.

As no separate oral decision is in the record, we will remand the record to enable the Immigration Judge to prepare one.

Accordingly, the following order will be entered.

ORDER:    The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion.

FOR THE BOARD

---

[2] Summary decisions are allowed only "where inadmissibility or deportability is determined on the pleadings pursuant to § 240.10(b) and the respondent does not make an application under § 240.11, the alien is statutorily ineligible for relief, or the respondent applies for voluntary departure only and the Immigration Judge grants the application . . . ." <u>See</u> 8 C.F.R. § 240.12(b).

IMMIGRATION COURT
1600 CALLOWHILL ST. SUITE 400
PHILADELPHIA, PA  19130

In the Matter of

Case No.: A29-734-408

*S-SALEH, SHERIF KAMEL (09/1999)
     Respondent                          IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on . 3-31-99
This memorandum is solely for the convenience of the parties.  If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[X]   The respondent was ordered removed from the United States to *EGYPT*
                                          or in the alternative to

[ ]   Respondent's application for voluntary departure was denied and
      respondent was ordered removed to
      alternative to

[ ]   Respondent's application for voluntary departure was granted until
           upon posting a bond in the amount of $ _____
      with an alternate order of removal to

[ ]   Respondent's application for asylum was ( )granted  ( )denied
      ( )withdrawn.

[ ]   Respondent's application for withholding of removal was ( )granted
      ( )denied  ( )withdrawn.

[ ]   Respondent's application for cancellation of removal under section
      240A(a) was ( )granted  ( )denied  ( )withdrawn.

[ ]   Respondent's application for cancellation of removal was ( ) granted
      under section 240A(b)(1)    ( ) granted under section 240A(b)(2)
      ( ) denied  ( ) withdrawn.  If granted, it was ordered that the
      respondent be issued all appropriate documents necessary to give
      effect to this order.

[ ]   Respondent's application for a waiver under section _____ of the INA was
      ( )granted  ( )denied  ( )withdrawn or ( )other.

[ ]   Respondent's application for adjustment of status under section _____
      of the INA was ( )granted  ( )denied  ( )withdrawn.  If granted, it
      was ordered that respondent be issued all appropriate documents necessary
      to give effect to this order.

[ ]   Respondent's status was rescinded under section 246.

[ ]   Respondent is admitted to the United States as a _____ until _____.

[ ]   As a condition of admission, respondent is to post a $ _____ bond.

[ ]   Respondent knowingly filed a frivolous asylum application after proper
      notice.

[ ]   Respondent was advised of the limitation on discretionary relief for
      failure to appear as ordered in the Immigration Judge's oral decision.

[ ]   Proceedings were terminated.

[ ]   Other: _____
      Date:
      Appeal: WAIVED    Appeal Due By:
                        4-30-99

                                          PAUL GRUSSENDORF
                                          Immigration Judge

ISS

AO 245B (Rev. 8/96) Sheet 1 - Judgment in a C  ase

# United States District Court

## Eastern District of Pennsylvania

UNITED STATES OF AMERICA

v.

SHERIF SALEH

**FILED**

**JUDGMENT IN A CRIMINAL CASE**

(For Offenses Committed On or After November 1, 1987)

Case Number: **2:97CR00343-002**

Anthony E. Stefanski, Esq.

MICHAEL E. KUNZ, Clerk
By— Dep. Clerk
Defendant's Attorney

**THE DEFENDANT:**

☒ pleaded guilty to count(s)  **1.**

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 26 U.S.C. § 5861 (d) | Unlawful possession of a destructive device | 12/02/1996 | 1 |

The defendant is sentenced as provided in pages 2 through __6__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.:  **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**

Defendant's Date of Birth:  **10/18/1960**

Defendant's USM No.:  **51084-066**

Defendant's Residence Address:

**P.O. Box 1904**

**Laurel Springs**          **NJ**    **08021**

Defendant's Mailing Address:

**P.O. Box 1904**

**Laurel Springs**          **NJ**    **08021**

**02/06/1998**

Date of Imposition of Judgment

Signature of Judicial Officer

**ROBERT F. KELLY**

**U.S. DISTRICT JUDGE**

Name & Title of Judicial Officer

Feb 6, 1998

Date

COPIES TO ALL PARTIES

AO 245B (Rev. 8/96) Sheet 2 – Imprisonment

DEFENDANT:        SHERIF SALEH

Judgment-Page __2__ of __

CASE NUMBER:    2:97CR00343-002

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of __22__ **month(s)** .

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☒ The defendant shall surrender to the United States Marshal for this district:

☒ at ____2:00____ p.m. on ____02/06/1998____ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on _____ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____

UNITED STATES MARSHAL

By _____

Deputy U.S. Marshal

AO 245B (Rev. 8/96) Sheet 3 - Supervised Release

●                                                        ●

Judgment-Page ___3___ of ___

DEFENDANT:        SHERIF SALEH
CASE NUMBER:     2:97CR00343-002

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of ___3___ year(s) .

    The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

    The defendant shall not commit another federal, state, or local crime.

    The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

    The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

    If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

    The defendant shall comply with the standard conditions that have been adopted by this court (set forth below) . The defendant shall also comply with the additional conditions on the attached page (if indicated below).

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 8/96) Sheet 5, Part A - Criminal Monetary Penalties

Judgment-Page ___4___ of ___

**DEFENDANT:**  SHERIF SALEH
**CASE NUMBER:**  2:97CR00343-002

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **Totals:** | $       100.00 | $ | $ |

☐ If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . . $ _____

## FINE

The above fine includes costs of incarceration and/or supervision in the amount of $ _____ .

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ The interest requirement is waived.

    ☐ The interest requirement is modified as follows:

## RESTITUTION

☐ The determination of restitution is deferred until _____ . An Amended Judgment in a Criminal Case will be entered after such a determination.

☐ The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | * Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
|  |  |  |  |
| Totals: | $ _____ | $ _____ |  |

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994 but before April 23, 1996.

AO 245B (Rev. 8/96) Sheet 5, Part B - Criminal Monetary Penalties

DEFENDANT:    SHERIF SALEH
CASE NUMBER:    2:97CR00343-002

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A ☒ in full immediately; or

B ☐ $ _____ immediately, balance due (in accordance with C, D, or E); or

C ☐ not later than _____ ; or

D ☐ in installments to commence _____ day(s) after the date of this judgment. In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E ☐ in _____ (e.g. equal, weekly, monthly, quarterly) installments of $ _____ over a period of _____ year(s) to commence _____ day(s) after the date of this judgment.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program are to be made as directed by the court, the probation officer, or the United States attorney.

745B (Rev. 8/96) Sheet 6 - Statement of Reason

Judgment-Page  6  of

DEFENDANT:      SHERIF SALEH

CASE NUMBER:    2:97CR00343-002

## STATEMENT OF REASONS

☒ The court adopts the factual findings and guideline application in the presentence report.

### OR

☐ The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):


**Guideline Range Determined by the Court:**

    Total Offense Level:      21

    Criminal History Category:      I

    Imprisonment Range:   37 to 46 months

    Supervised Release Range:   2 to 3 years

    Fine Range:  $ ____7,500.00____ to $ ____75,000.00____

    ☒ Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution: $ _____

    ☐ Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S. § 3663(d).

    ☐ For offenses committed on or after September 13, 1994 but before April 23, 1996 that require the total amoun of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the forseeabl future under any reasonable schedule of payments.

    ☐ Partial restitution is ordered for the following reason(s):


    ☐ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

### OR

    ☐ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):


### OR

☒ The sentence departs from the guideline range:

    ☒ upon motion of the government, as a result of defendant's substantial assistance.

    ☐ for the following specific reason(s):

## CERTIFICATE OF SERVICE

CASE NAME:        Sherif Kamel Saleh
CASE NO:          A29-734-408

     I HEREBY CERTIFY that, on this 19$^h$ day of November, 1998, I caused to be served the Notice of Intent to Offer Evidence:

___X___       by placing a true copy thereof in a sealed envelope, with postage thereon fully prepaid and causing the same to be mailed by first class mail to the person at the address set forth below.

_____       by causing to be personally served to the person set forth below.

_____       by FEDERAL EXPRESS:  AIRBORNE EXPRESS to the person at the address set forth below.

_____       by telefaxing with acknowledgment of receipt to the person at the address set forth below.

Martin A. Kascavage, Esq.
Jane M. Schoener, P.C.
400 Market Street
Philadelphia, PA  19106

     I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 19, 1998.

*Gail Jones*

Gail Jones
Legal Assistant
U.S. Immigration and Naturalization Service
1600 Callowhill Street, Room 530
Philadelphia, PA 19130

U.S. Department of Justice
Immigration and Naturalization Service



**Notice to Appear**

**In removal proceedings under section 240 of the Immigration and Nationality Act**

File No: A29 734 408

In the Matter of:

Respondent: Sherif          Kamel          SALEH
Inmate# 51084-066    PRD: 9/8/99
LSCI Allenwood    PO Box 1000
White Deer                                            PA    17887          717-547-1990
                   (Number, street, city, state and ZIP code)                    (Area code and phone number)

☐ 1. You are an arriving alien.
☐ 2. You are an alien present in the United States who has not been admitted or paroled.
☒ 3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of Egypt and a citizen of Egypt;

3. You entered the United States at or near New York, New York on or about June 17, 1984 as a nonimmigrant visitor for pleasure.

4. Your status was adjusted to that of a conditional  permanent resident on June 13, 1990 at Camden, NJ;

5. Your status was then adjusted to that of a lawful permanent resident on August 31, 1992 at Camden, NJ;

6. You were, on February 6, 1998, convicted in the United States District Court at The Eastern District of Pennsylvania for the offense of Unlawful Possession of a Destructive Device in violation of 26 United States Code, Section 5861(d).

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in section 101(a)(43)( E ) of the Act, a law relating to firearms offenses.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐ Section 235(b)(1) order was vacated pursuant to:    ☐ 8 CFR 208.30(f)(2)    ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:  1600 Callowhill Street, Room 400, Philadelphia, PA  19130
                                    (Complete Address of Immigration Court, Including Room Number, if any)
on _____TO BE SET_____ at _____ to show why you should not be removed from the United States based on the
          (Date)                    (Time)
charge(s) set forth above.

                                        _Kathryn A. Jenny / IHP Director_
                                        (Signature and Title of Issuing Officer)

Date:  **OCT 0 6 1998** _____

                                        Allenwood, PA
                                        (City and State)

**See reverse for important information**

Form I-862 (Rev. 4-1-97)

# EXHIBIT - 6

ee reverse for important informa

**Warning: Any statement you make may be used against you in removal proceedings.**

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

---

**Request for Prompt Hearing**

To expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appea before an immigration judge.

 

 

_____
(Signature of Respondent)

Before:

_____
Kevin M. Wetzel
(Signature and Title of INS Officer)

Date: _____

---

**Certificate of Service**

This Notice to Appear was served on the respondent by me on ___10/6/98___ , in the following manner and in
                                                             (Date)
compliance with section 239(a)(1)(F) of the Act:

 

☒ in person       ☐ by certified mail, return receipt requested       ☐ by regular mail

 

☒ Attached is a list of organizations and attorneys which provide free legal services.

☒ The alien was provided oral notice in the ___English___ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____
(Signature of Respondent if Personally Served)

_____
Kevin M. Wetzel / Agent
(Signature and Title of Officer)

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
YORK, PENNSYLVANIA

RECEIVED
DEPARTMENT OF JUSTICE

2000 JAN 24 P 1:00


MARTIN B. KATZ
130 S EASTON RD.
GLENSIDE      PA 19038


IN THE MATTER OF          FILE A 27-748-801      DATE: Jan 24, 2000
*S-LE, AHN TRUNG (05/1999)
08440-031

__ UNABLE TO FORWARD - NO ADDRESS PROVIDED

X ATTACHED IS A COPY OF THE DECISION OF THE IMMIGRATION JUDGE.  THIS DECISION
IS FINAL UNLESS AN APPEAL IS FILED WITH THE BOARD OF IMMIGRATION APPEALS
WITHIN 30 CALENDAR DAYS OF THE DATE OF THE MAILING OF THIS WRITTEN DECISION.
SEE THE ENCLOSED FORMS AND INSTRUCTIONS FOR PROPERLY PREPARING YOUR APPEAL.
YOUR NOTICE OF APPEAL, ATTACHED DOCUMENTS, AND FEE OR FEE WAIVER REQUEST
MUST BE MAILED TO:    BOARD OF IMMIGRATION APPEALS
                      OFFICE OF THE CLERK
                      P.O. BOX 8530
                      FALLS CHURCH, VA  22041


__ ATTACHED IS A COPY OF THE DECISION OF THE IMMIGRATION JUDGE AS THE RESULT
OF YOUR FAILURE TO APPEAR AT YOUR SCHEDULED DEPORTATION OR REMOVAL HEARING.
THIS DECISION IS FINAL UNLESS A MOTION TO REOPEN IS FILED IN ACCORDANCE
WITH SECTION 242B(c)(3) OF THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C.
SECTION 1252B(c)(3) IN DEPORTATION PROCEEDINGS OR SECTION 240(c)(6),
8 U.S.C. SECTION 1229a(c)(6) IN REMOVAL PROCEEDINGS.  IF YOU FILE A MOTION
TO REOPEN, YOUR MOTION MUST BE FILED WITH THIS COURT:

                      IMMIGRATION COURT
                      3434 CONCORD ROAD
                      YORK, PA  17402

X OTHER:  Appeal due NLT 2/22/00


                      _____
                      COURT CLERK
                      IMMIGRATION COURT                          FF

CC: DISTRICT COUNSEL, C/O YORK PRISON
    3400 CONCORD ROAD
    YORK, PA, 17402

SB1

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
YORK, PENNSYLVANIA 17402

IN THE MATTER OF                              IN REMOVAL PROCEEDINGS
LE, Ahn Trung
                                             CASE# A 27 748 801

GROUNDS OF REMOVAL: 212(a)(7)(A)(i)

ON BEHALF OF RESPONDENT                       ON BEHALF OF INS
Martin B. Katz, Esq.                          Theodore Murphy
130 S. Easton Road,                           Assistant District Counsel
Glenside, PA 19038

APPLICATION: U.N. Convention Against Torture

WRITTEN DECISION AND ORDER

The respondent is a 30-year-old married male (common law) alien, native and citizen of
Vietnam, who emigrated to the United States in January 1986 as a refugee (Amerasian child), at the age
of 16. The respondent adjusted status to lawful permanent resident within two years of his admission
as a refugee. The respondent has never met his father, and his mother has submitted an affidavit, of
record, detailing her son's birth in Vietnam and whose father was a serviceman during the war. On
November 4, 1998, the respondent was served a Notice to Appear, Form I-862, charging him as an
aggravated felon under section 237(a)(2)(A)(iii), and also as an alien convicted of a weapons offense,
pursuant to section 237(a)(2)(C) of the INA. On March 31, 1999, the Service served upon the
respondent an additional charging document, Form I-261, setting forth allegations 6 through 9, which
was adjudicated by a prior immigration judge, who found the respondent to have been convicted of an
aggravated felony. When the respondent appeared before this court, the two grounds of removal as set
forth in the original NTA were dismissed, but which did not disturb the prior finding of aggravated
felony against this respondent. Because the respondent's sentence for the conviction set forth in
allegation 9 is in excess of 5 years, the respondent is precluded from eligibility for withholding of
removal under section 241(b)(3) of the Act, as well as for asylum under section 208 of the Act. The
respondent then elected to proceed under Article 3 of the U.N. Convention Against Torture and other

1

Cruel, Inhuman, Degrading Treatment or Punishment.

To this end the respondent testified that he came to the United States at the age of 16.  Prior to that time, he lived in Vietnam with a nanny paid by his mother and attended school until the 10th grade, but in a private school for his own protection; the respondent testified that public schools in Vietnam did not accept the children of American soldiers.  Growing up he was routinely harassed by other children due to his American blood, and had stones thrown at him.  On one occasion he observed another Amerasian child hit by a stone and dragged away by the police under the ruse of being caught stealing.

According to the respondent, Amerasian children had to avoid the police, who also harassed them and who would arrest them on trumped up charges.  One day while returning home from school, he was threatened by two adults, who chased him home, discovering that the two men were policemen.  The respondent also related that he occasionally stayed with his mother, but not often since she was known in the town to have fathered a child of a U.S. soldier; thus, it was safer for him to reside with a nanny to minimize harm to him.  In this regard, the respondent testified that his mother had been forced into servitude in a "re-education camp" by the government because of her support for the U.S. military.  In any event, at age 16 the respondent was able to emigrate to the United States under the Amerasian program, along with his mother.  He fears that he has no life in Vietnam, is not considered a true Vietnamese and thus would forever be ostracized by that society, and cannot seek assistance from the Vietnamese government, who did not support him when he lived there as a child, and who would not support him as an adult.  The respondent also fears being jailed upon his return and being subjected to torture therein.

Counsel for the respondent maintains that while there is not a lot of evidence to show an absolute certainty that the respondent would be subjected to torture upon his return to Vietnam, counsel argues that that is not the burden which must be met.  Counsel has submitted excerpts from the book entitled "Vietnamerica: The War Comes Home," by Thomas A. Bass (Soho Press, Inc. 1966).[1]  Counsel argues that, as the respondent suffered abuses and ostracism in the past as the child of a U.S. soldier, so, too, would he suffer the same fate upon his return.  The humiliation, discrimination, and ill-treatment meted out by his government, counsel posits, qualifies as "torture" under Article 3 of the Torture Convention.

Under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, the United States has agreed not to "expel, return or extradite" a person to another state where he or she would be tortured:

1. No State party shall expel, return (refouler)

---

[1] The court sincerely appreciates counsel's generous contribution of this book to the court's library, a copy of which was also generously provided to the Service's litigation department here in York.

2

or extradite a person to another State where
there are substantial grounds for believing that he or she would be in danger of
being subjected to torture.

2. For the purposes of determining whether there are such grounds, the competent
authorities shall take into account all relevant considerations including, where
applicable, the existence in the State concerned of a consistent pattern of gross,
flagrant, or mass violations of human rights.

While there are similarities between Article 3 of the Torture Convention and Article 33 of the 1951
Convention Relating to the Status of Refugees, which the United States has implemented through
application of withholding of removal pursuant to section 241(b)(3) of the Immigration and Nationality
Act, there are also important differences between the two.

First, there are no exceptions carved out under the Torture Convention to exclude persons who
may or must be exempted under Article 33, such as persecutors, those convicted of particularly serious
non-political crimes, or terrorists.  Second, section 241(b)(3) applies only to those aliens who would
face persecution on account of the five grounds set forth at section 101(a)(42)(A) of the INA.  Article
3 of the Torture Convention covers all persons who fear torture based on any consideration or basis.
Third, torture is not synonymous with "persecution," although there may be an over-lapping of violence
which may encompass both actions.  Thus, a claim under Article 3 of the Torture Convention is broader
in certain aspects, narrower in others, in relation to Article 33 of the 1951 U.N. Convention.

Aliens under removal proceedings under section 240, or under deportation or exclusion
proceedings, may make a claim under Article 3, along with any other application, before an immigration
court.  The Attorney General of the United States has promulgated regulations which the courts must
apply when adjudicating claims under the Torture Convention. These regulations are presently set forth
at 8 C.F.R. §208.16 *et seq.*, entitled Withholding of removal under section 241(b)(3)(B) of the Act and
withholding of removal under the Convention Against Torture.  For all practical purposes, an alien
making an application for asylum, also considered a tandem application for withholding of removal,
should automatically be considered as making an application for relief under the Torture Convention.
The regulations provide for the adjudication of such claims, and the framework for such adjudication.
The burden of proof is on the alien to establish that "it is more likely than not that he or she would be
tortured if removed to the proposed country of removal. The testimony of the applicant, if credible, may
be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.16(c)(2).

In assessing whether it is "more likely than not" that an applicant would be tortured in the
proposed country of removal, all evidence relevant to the possibility of future torture shall be
considered, including, but not limited to:

(i) Evidence of past torture inflicted upon the applicant:
(ii) Evidence that the applicant could relocate to a part of the country
   of removal where he is not likely to be tortured;
(iii) Evidence of gross, flagrant or mass violations of human rights within

3

the country of removal, where applicable; and:
(Iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 208.16(c)(3).

If an alien expresses a fear of persecution in returning to his or her country of nativity, but if asylum must be pretermitted due to an aggravated felony conviction, or the other bars set forth under section 208(b)(2) of the Act, the judge must first hear testimony on the merits of the claim of persecution and/or torture before determining whether the aggravated felony conviction is a "particularly serious crime." 8 C.F.R. 208.16 (c)(4). If the judge determines that the alien has satisfied his or her burden of proof of establishing more likely than not that torture will occur in the country of removal, the judge must grant the alien withholding of removal under section 241(b)(3) of the Act under the auspices of Article 3 of the Torture Convention, unless the alien is barred from such relief in accordance with section 241(b)(3)(B) of the Act, in which case the judge must pretermit withholding of removal. At that point the regulations require the judge to <u>defer</u> the alien's removal in accordance with 8 C.F.R. § 208.17(a). In the case at bar, the court has considered this case for deferral of removal only, given this court's earlier finding that he is barred from consideration for asylum or withholding of removal.

Further, the regulations provide a definition of "torture" at 8 C.F.R. § 208.18(a), which essentially tracks the definition of the term as set forth under Article 1 of the Torture Convention. It must be stressed that the definition of "torture" is not all encompassing, and it is not to be construed as a definitive list or types of acts which would constitute torture. Rather, the regulations set forth the general parameters under which the judge adjudicates the claim, expressing certain basic elements that must be present before a finding can be made that an act will constitute torture.

"Torture" is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. 8 C.F.R. § 208.18(a)(1).

Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman, or degrading treatment or punishment that do not amount to torture. 8 C.F.R. § 208.18(a)(2). Torture does not include pain or suffering arising only from, inherent in, or incidental to lawful sanctions. 8 C.F.R. 208.18(a)(3). Lawful sanctions include judicially imposed sanctions and other law enforcement actions authorized by law, including the death penalty, but do not include sanctions that defeat the object and purpose of the Convention Against Torture to prohibit torture.

Furthermore, in order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering: an act that results in unanticipated or unintended severity of pain or suffering is not torture. 8 C.F.R. § 208.18(a)(5). Finally, in order to constitute torture, an act must

4