UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JIBRIL KOITA, GLADWIN WILSON, OMARI MAHER, SALEH SHERIF, CELIO DE LA CRUZ, and ANH LE,<br><br>Petitioners<br><br>v.<br><br>JANET RENO,<br><br>Respondent | : 1:CV-00-0070<br>:<br>: (Judge Caldwell)<br>: |

FILED
HARRISBURG, PA
SEP 1 8 2000
MARY E. D'ANDREA, CLERK
Per _____

STATUS REPORT

By Order dated September 12, 2000, the Court directed the respondent to file a report on the status of the INS proceedings against petitioners Jibril Koita, Gladwin Wilson, Maher Omari, Saleh Sherif and Anh Le. This Status Report is submitted in response to the Court's Order. The additional facts contained herein were provided to the undersigned telephonically by INS District Counsel Kent Frederick, based upon records maintained by the INS.

Petitioner Jibril Koita is a native and citizen of Gambia who entered the United States in 1989 and became a lawful permanent resident as June 14, 1995. In 1995, he was convicted on New York criminal charges (Criminal Possession of Stolen Property in the Fifth Degree), and in 1999 he was convicted in

1

United States District Court for the District of Delaware of conspiracy to commit bank fraud, and sentenced to six months incarceration. He has been in removal proceedings since June, 1999 for failing to reveal several arrests on his application to adjust to permanent residence and because of his criminal convictions as set forth above. Mr. Koita's removal proceedings are still pending; he has a hearing scheduled before an immigration judge on October 2, 2000.

Petitioner Gladwin Wilson is a native and citizen of Guyana who entered the United States in 1988. On October 15, 1999, Mr. Wilson was ordered deported to Guyana. Through his attorney (who is not representing him before this Court), he timely filed an appeal to the Board of Immigration Appeals. His appeal was dismissed by the BIA on May 5, 2000. He thereafter received his 90 day custody review, which resulted in a decision to detain him pending deportation. See Exhibit A hereto. He is currently being detained at the Snyder County Prison. INS District Counsel Frederick has informed the undersigned that in his experience removal to Guyana is slow, but that it is eventually effected.

Petitioner Maher Omari is a native and citizen of Jordan. He entered the United States on a tourist visa in 1989. In 1998, Mr. Omari was convicted in the United States District Court for the Northern District of Illinois of conspiracy to defraud the government. A final administrative removal order was entered

2

against Mr. Omari on May 10, 1999. On October 8, 1999, an immigration judge granted Mr. Omari withholding of removal. The INS timely appealed that decision to the Board of Immigration Appeals, which remanded the case to the immigration judge. On May 24, Mr. Omari was granted deferral of removal under the Convention Against Torture. The INS appealed the deferral to the Board of Immigration Appeals, where it is currently pending. Mr. Omari is being detained in the Snyder County Prison pending the outcome of the appeal.

As noted in respondent's Response to Order to Show Cause, petitioner Celio De La Cruz was removed to the Dominican Republic on February 10, 2000. Thus, Mr. De La Cruz is no longer in INS custody.

Petitioner Sherif Saleh is a native and citizen of Egypt who entered the United States in 1984 on a visitor's visa, and whose status was adjusted to that of a lawful permanent resident in 1992. In 1998, Mr. Saleh was convicted in the United States District Court for the Eastern District of Pennsylvania for unlawful possession of a destructive device, and was sentenced to 22 months incarceration. On October 5, 1999, an order of removal was entered against Mr. Saleh. He appealed the order to the Board of Immigration Appeals, which dismissed the appeal in February, 2000. The INS is awaiting travel documents for Mr. Saleh, and has not yet provided him with a custody review. Mr.

3

Saleh is currently being held at the Snyder County Prison.

Petitioner Anh Le is a native and citizen of Vietnam who entered the United States in 1986 as a refugee and became a lawful permanent resident shortly thereafter. Petitioner was placed in removal proceedings based on 1989 Kansas state convictions on charges of theft and receiving stolen property, criminal damage to property, and burglary; and 1991 Kansas convictions on charges of violating conditions of previous probation. After a final order of removal was entered against petitioner on January 21, 2000, he appealed to the Board of Immigration Appeals, which dismissed his appeal on May 31, 2000. A custody review resulted in a recommendation of continued detention.

As the Court is aware, repatriation of Vietnamese nationals has been problematic. Diplomatic negotiations are ongoing. The Declaration of James G. Hergen, attached hereto as Exhibit B, sets forth the progress that has been made in recent months.

          Respectfully submitted,

          DAVID M. BARASCH
          United States Attorney

          *Mary Catherine Frye*

          MARY CATHERINE FRYE
          Assistant U.S. Attorney
          228 Walnut Street
          Harrisburg, PA 17108
          (717) 221-4482
          Attorneys for Respondent

Dated: September 18, 2000

4

# EXHIBIT - 1

# POST ORDER CUSTODY REVIEW WORKSHEET FOR FILE REVIEW AND/OR INTERVIEW

**Detainee Name** Gladwin WILSON   **Date of Birth:** 01/03/59   **"A" Number:** 41 928 716

**AKAs:**   **BOP Number:** 47748-053

**Country of Birth:** Guyana   **Citizenship:** Guyana

**Date of Arrival:** April 18, 1988   **Place of Arrival:** New York, NY

**Manner of Arrival:** P5-1 Immigrant   **Last Date into INS Custody:** June 15, 1999

**Entered INS Custody from:** ☐ Local, ☐ State, or ☒ Federal ☐ Other

**Location:** LSCI Allenwood   **Institution Number:** 47748-053

**Immigration History:** (Prior INS arrest[s]/parole/bond/custody information)

Describe: Subject entered in 1988 as an Immigrant. He was ordered deported on October 15, 1999. BIA dismissed his appeal on May 10, 2000.

**Deportation Officer:** David O'Neill   **Date of Review:** August 10, 2000

**Location Detained:** Snyder County Jail

## Deportation/Exclusion/Removal Proceedings

**List all Charges:**   ☒ Section 237 (a)(2)(A)(iii),
☐ Section 212 (a) , ,
☐ Section 241 , ,

☒ Under <u>Final Order</u> dated 5/10/00 by ☐ IJ ☒ BIA ☐ Other

☐ Appeal Waived/Appeal Time Elapsed

**Travel Document Status/History:**

Request made to the Guyanan Consulate on May 26, 2000. Request for further HQ assistance made on June 21, 2000. Consulate called on August 10, 2000 and they stated that they are still waiting for word from Guyana before they can issue the document.

## Legal Representative / Attorney

**G-28 Filed:**  ☐ Yes  ☒ No

***Legal Rep/Atty Notified of Interview:**  ☐ Yes  ☐ N/A   by:          on:

**Name of Representative / Attorney:**

**Mailing Address:**                          **Telephone Number:**

**Present during interview:**   ☐ Yes   ☐ No

## Criminal History

**Outside the United States:** none knonwn
(specify nature of crime, whether convicted, sentence imposed, date, and country)

**In the United States:** Certified copies of convictions for the following in file:

Defendant and others conspired to utter and possess forged and counterfeit securities.

**NCIC Checks:**   ☒ Criminal History   ☐ No record Found
                     (State and Federal)

Summary of record:

FBI#: 206953DB0

| Date: | Location | Crime | Disposition |
|---|---|---|---|
| 12/20/96 | New York | Counterfeit Securities | Convicted 8/7/98<br>1 year 1 day<br>$10,000 restitution<br>3 years supervised release |

## Institutional / Disciplinary Record

**Did the detainee have prior Disciplinary Reports?**   ☐ Yes   ☒ No

　　If Yes, List & Describe:

　　Source:     SENTRY

**Disciplinary reports and Incidents while in INS Custody?**   ■ Yes   ☒ No

　　If Yes, List & Describe:
Source:

## Specifics of Interview

Date of File Review:    8/10/00

Date of Detainee Interview: n/a

Location of Interview:

Interviewing Officer: #1:

        #2:

Interpreter Used:   ☐ Yes   ☐ No   Name:
Language/Dialect:

---

**Does the detainee have a place to live in the United States?**   ☒ Yes  ☐ No

    Address:    3126 Dwight Avenue
                  Far Rockaway, NY

**Is the detainee subject to any parole or probation requirements?**   ☒ Yes  ☐ No

    Describe:   3 years of supervised release with the U.S. Department of Probation

**Does the detainee have close family ties within the United States?**   ☒ Yes  ☐ No

    Describe:   Subject's wife and 3 children reside at above address.

**Does the detainee have any community ties or non-governmental sponsors?**
    ☐ Yes   ☒ No
    Describe:

**Does the detainee have any employment prospects?**   ☒ Yes   ☐ No

    Describe:   Subject claims to own his own shipping company
                  Gladwin, INC.
                  1159 Bedford Ave
                  Brooklyn, NY 11216

**What is the detainee's employment history?**

    Describe:   Subject has worked in Construction and the Shipping industry.

**What is the detainee's educational level?**

    Describe:   unknown

**Does the detainee have any vocational training?**

    Describe: no

## Medical/Psychological Concerns

Medical/Psychological Report / Summary: ☐ In File  ☒ None  ☐ Not Available

Date and Source:

Other documentary evidence for consideration in this review:

Subject has submitted several letters and certificates to be used in his review.

## Discussion at Interview

Notes: **Subject was not interviewed at this time. File Review only**

**Regarding life in his home country**

**Regarding entry information**

**Regarding his family ties**

**Regarding employment and education**

**Regarding his criminal history in the US,**

**Regarding his institutional record**

**Regarding community support and sponsors**

**Regarding him being a threat to the community or flight risk**

The INS detainee was found   ☐ **CREDIBLE**    ☐ **NOT CREDIBLE**

**Explain:**

Subject was not interviewed at this time.

---

### Officer Comments/Analysis & Recommendation

Subject has one criminal conviction for a non-violent crime (counterfeit securities). While subject has been incarcerated he has maintained clear institutional disciplinary conduct. Therefore subject does not appear to pose a threat to society at this time.

Subject has close family in the United States. Subject also appears to have equity in the U.S. However, subject has exhausted all of his legal means to stay his deportation and the issuance of a travel document appears imminent. The Guyanan consulate has a request from this office, which includes a copy of his birth certificate. Although, Guyana is usually extremely slow in issuing travel documents, it is likely that he will be deported within a few months. Therefore, I am not convinced that subject would not pose a flight risk if he was released.

**Recommendation:** **I recommend continued detention or in the alternative, release on a significant bond.**

David O'Neill, Deportation Officer
Interviewing Officer #1:           Date: 8/11/00        (Detain) (Release)

Interviewing Officer #2:
(optional)                          Date:               Detain (Release)

John Lawton, SDDO
Reviewed by:                        Date: 8/11/00       Concur (Do Not Concur)

# DISTRICT DIRECTOR'S CUSTODY DETERMINATION

☐ RELEASE FROM CUSTODY / ORDER OF SUPERVISION

☐ RELEASE FROM CUSTODY / ORDER OF SUPERVISION UNDER BOND

　　Bond Amount: _____

☑ CONTINUE IN CUSTODY / SCHEDULE FOR REVIEW IN SIX MONTHS

Comments (attach additional sheet(s) if necessary):


INS District Office:　_____

Signature of District Director:　_____　　Date: 9/7/00
or Designee

_J Sallemi_  _OIC MDMP_
(Printed Name & Title)

---

## HEADQUARTER'S REVIEW OF CONTINUED DETENTION

| Reviewing Officers | Concur | Reconsider | Date |
|---|---|---|---|
| (Name, Title, Signature) | ___ | ___ | ___ |
| (Name, Title, Signature) | ___ | ___ | ___ |
| (Name, Title, Signature) | ___ | ___ | ___ |

For comments, please refer to the "Headquarters Post Order Custody Review" form.

(Final 10/18/99)

# EXHIBIT - 2

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE:<br>INDEFINITE DETENTION CASES<br>(LAOS)<br><br>v.<br><br>IMMIGRATION AND<br>NATURALIZATION<br>SERVICE, et al.,<br><br>Respondents. | ) CASE NO. CV 99-2853-TJH (AJW)<br>)    (And Related Cases)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SUPPLEMENTAL DECLARATION OF JAMES G. HERGEN

1. This declaration -- which is in response to Magistrate Judge Wistrich's procedural order of May 1, 2000 -- supplements my previous declarations of July 21, September 15, November 17, and 26, 1999, and January 7 and March 23, 2000 in related cases.

2. I have been personally involved in ongoing efforts to encourage the governments of Cambodia, Laos, and Vietnam to accept back their nationals who have been ordered excluded, deported, or removed from the U.S. by lawful authority.

3. The Department of Justice has requested that I provide this further supplemental declaration in order to describe the current status of the ongoing diplomatic efforts by the U.S. government to encourage the governments of Vietnam, Cambodia, and Laos to take back their nationals who have been ordered excluded, deported, or removed from the U.S.

4. I have authorized the Department of Justice to use this declaration in connection with similar pending litigation in this and other federal courts.

5. A high level delegation of Department of State, Department of Justice, and Immigration and Naturalization Service (INS) officials traveled to Phnom Penh, Cambodia; Hanoi, Vietnam; and Vientiane, Laos for the period April 16-28, 2000 to discuss the repatriation of Cambodian, Vietnamese, and Laotian nationals currently in the U.S. who have been ordered removed to those countries after

undergoing immigration proceedings. I was a member of the U.S. delegation, and this declaration is based upon my personal knowledge.

6. The U.S. delegation held discussions with the government of Laos on April 19, 2000 for approximately three hours, with the government of Vietnam on April 21 for approximately six hours, and with the government of Cambodia on April 26 and 27 for approximately six hours.

7. In my opinion, the discussions with all three states were productive and highly encouraging. All three governments were receptive, polite, interested, and cooperative. Each accepted in principle the international obligation to accept the return of their nationals, and evinced a sincere desire to achieve early agreement on orderly processes for repatriation.

8. The general structure of the U.S. presentation was essentially the same with respect to all three states. We first briefly reviewed the results of our previous talks in February. Then, we emphasized certain basic precepts that we believe should apply, inter alia: that we should agree first on fundamental principles; that a formal written agreement is not a prerequisite (indeed, the U.S. does not have formal agreements with most states); that no case or class of cases should be prejudged or excluded from consideration, but rather that all cases must be considered on their individual merits in the light of all surrounding facts and circumstances; that any arrangement the two states achieve must be orderly and transparent; and that the requesting state shall bear all expenses relative to the repatriation of particular individuals. In addition, the U.S. delegation invited each state promptly to send a delegation of experts to the U.S., at U.S. expense, in order to interview their detained nationals, to visit our confinement facilities, to meet with our judicial and administrative immigration experts, and to observe how the U.S. repatriates individuals to other states.

9. As part of its presentation, the U.S. side presented to each of the three states copies of various graphs that reflect, inter alia, the various Asian countries with whom the U.S. maintains repatriation regimes, and that graphically display the numbers of individuals who have recently been repatriated from the U.S. to the various states. The graphs also depict the numbers of Cambodian, Laotian, and Vietnamese nationals who are detained in the U.S. under final orders of deportation, exclusion, or removal.

10. In addition, the U.S. presented to each state in advance of the April meetings for consideration and/or discussion at the meetings a number of actual pending case files.

11. All three states were clearly impressed with the thoroughness and seriousness of the U.S. presentations, and they each readily conceded their international legal obligations to accept back their nationals. Each state was careful to emphasize, however, the serious practical difficulties that could attach to confirming

2

nationality in a region that had been so destabilized and ravaged by warfare and refugee migration for such a protracted period, particularly where the ostensible nationals had been in the U.S. for lengthy periods.

12. The U.S. side clearly made the most progress with the Government of Cambodia, which agreed to record our current understandings in a "Joint Statement," of April 27. Copy attached as Exhibit 1. (The attached copy is the best copy that is currently available in Washington, D.C.). INS now plans to begin consultations with the Cambodian government at the working level in order to define the technical modalities for confirming nationality, etc., in the expectation that initial repatriations shall occur shortly -- hopefully, within the next several months.

13. The U.S. delegation was particularly pleased with the forthcoming attitude of the Government of Laos, which solicited a formal diplomatic note from the U.S. explaining in written detail our proposals. Copy attached as Exhibit 2. (The attached copy is the best copy that is currently available in Washington, D.C.). Since general relations between the U.S. and Laos are currently strained, the U.S. delegation was both surprised and encouraged by the cordiality and receptivity of the Lao delegation to our repatriation overtures. We take this positive attitude on the part of the Laotians to be an extremely encouraging sign under the circumstances.

14. Although the Vietnamese and Cambodian delegations were comprised essentially of the same individuals who had represented those governments at the February discussions, the Laotian delegation was significantly enhanced for the April session, to include the Director General of the Europe and Americas Division, Ministry of Foreign Affairs (Done Somvorachit); the Deputy Director of the Consular Department, Ministry of Foreign Affairs (Seng Soukhathivong); the Deputy Director of the International Organizations Department, Ministry of Foreign Affairs (Southam Sakonhnihom); the Deputy Director of the Treaties and Legal Affairs, Ministry of Foreign Affairs (Phoukhao Phommavongsa); Deputy Director for the Europe and Americas Division, Ministry of Foreign Affairs (Bounneme Chouanghom); and a representative of the External Affairs Department, Ministry of Interior.

15. Based on the April discussions, the current U.S. plan regarding Cambodia is for INS to commence as soon as possible at the working level to review particular cases -- probably in the context of a "joint commission" model that has been successfully applied to U.S.-Cambodian efforts to locate and repatriate the remains of American MIA's. We reasonably anticipate that such further discussions will bear fruit in the very near future. We will not be able to assess the likelihood of concrete, early results with Laos until we receive a response to our diplomatic note of April 20. Nevertheless, all of the signs for a positive, early result are excellent, and we remain optimistic that the government of Laos wishes to engage us in good faith to establish a repatriation process soon. Although willing to acknowledge in principle Vietnam's obligation to accept the return of

3

its nationals, the Vietnamese -- as opposed to the Laotians and Cambodians -- appear to prefer a formal, written repatriation agreement, and have undertaken to provide us with written comments on the draft agreement that we provided during our February visit to Hanoi.

16. Based upon the foregoing, I am strongly of the view that there is a reasonable possibility in the case of all three states that we will be able to negotiate a repatriation arrangement in the foreseeable future. This does not, to be sure, mean that such arrangements are imminent, or that they will result in the immediate repatriation of all nationals of the three states who are currently detained in the U.S. under final orders of deportation, exclusion, or removal. By definition, diplomatic negotiations between sovereign states are delicate, difficult, and complex, and it would be foolhardy for me to attempt to predict dates certain for the conclusion of any such arrangements. Nevertheless, I can say unequivocally that I am extremely encouraged by the apparent good faith and seriousness that all three states have evinced in the course of these negotiations to date, and that I remain sanguine about the prospects for the commencement of repatriations to all three states within the foreseeable future.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

    Executed at Washington, D.C.
    May 5, 2000

                                    James G. Hergen

Exhibits: a/s

4

MAY-17-2000 10:45    INS DISTRICT COUNSEL                    215 656 7148   P.06/13

**EXHIBIT 1**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

On this 18th day of September, 2000, she served copies of the foregoing document by placing said copies in postpaid envelopes addressed to the persons hereinafter named, at the addresses stated, which are the last known addresses of petitioners, and by depositing said envelopes and contents in the United States Mail at Harrisburg, Pennsylvania to:

Jibril Koita
A74 190 504
York County Prison
3400 Concord Road
York, PA  17402

Celio Enrique Delacruz-Tarjeda
A37 647 503
Snyder County Prison
600 Old Colony Road
Selinsgrove, PA 17870

Maher Omari
A76 766 772
Snyder County Prison
600 Old Colony Road
Selinsgrove, PA 17870

Gladwin Wilson
A41 928 716
Snyder County Prison
600 Old Colony Road
Selinsgrove, PA 17870

Sherif Kamel Saleh
A29-734-408
Snyder County Prison
600 Old Colony Road
Selinsgrove, PA 17870

Anh Trung Le
A27 748 801
Snyder County Prison
600 Old Colony Road
Selinsgrove, PA 17870

*Kathy Enders*
KATHY ENDERS
Legal Secretary