UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JIBRIL KOITA, GLADWIN WILSON, OMARI MAHER, SALEH SHERIF, CELIO DE LA CRUZ, and ANH LE, | : <br> : 1:CV-00-0070 <br> : <br> : (Judge Caldwell) |
| Petitioners | : |
| v. | : |
| JANET RENO, | : |
| Respondent | : |

FILED
HARRISBURG
JAN 1 1 2001
MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

RESPONSE IN OPPOSITION TO
PETITION TO REOPEN

Petitioner Maher Omari filed a petition to reopen this case on or about December, 2000, on the grounds that respondent had failed to provide the file review required by the Court's October 6, 2000, Order. The Court issued an Order on December 22, 2000, directing respondent to file a response within twenty days. This response is filed in accordance with the Court's Order.

Petitioner Omari claims that the government has "failed to comply with the court's Order of September 27, 2000, requirement that the INS conduct a hearing in accord with Ngo, 192 F.3d 390 (3d Cir. 1999)." Petition to Reopen, at 2. He explains that:

1

> The review process that the INS conducted in the case at bar was superficial and arbitrary. The review process was based on the interviewer's preference or convenience rather than the intrinsic nature of the interim procedures. The INS only conducted the review simply to satisfy the court's order, and summarily concluded that petitioners [sic] pose a flight risk.

Petition to Reopen, at 3.

At the time petitioner filed his original petition for writ of habeas corpus, the immigration judge's decision granting relief under the Convention Against Torture was on appeal to the Board of Immigration Appeals. On December 11, 2000, the BIA dismissed the appeal, agreeing that it is more likely than not that Mr. Omari will be tortured if he returns to his native Jordan. See Exhibit A hereto. As a result of the BIA's decision, Mr. Omari's removal order became final on December 11, 2000. See Exhibit B (letter from Institutional Hearing Program Director Robert M. Culley to petitioner, dated December 21, 2000). On December 26, 2000, Mr. Omari was notified that he would receive a post-final order custody review on or about February 1, 2001. See Exhibit C hereto.

Given that Mr. Omari is now scheduled for a review in accordance with both Ngo and the applicable regulations within two weeks, and given that he has successfully obtained relief under the Convention Against Torture, respondent would contend that he has been afforded that process which is due in the

2

circumstances. Accordingly, respondent respectfully requests that the Court deny the Motion to Reopen at this time.

                        Respectfully submitted,

                        DAVID M. BARASCH
                        United States Attorney

                        *Mary Catherine Frye*
                        MARY CATHERINE FRYE
                        Assistant U.S. Attorney
                        228 Walnut Street
                        Harrisburg, PA 17108
                        (717) 221-4482

                        Attorneys for Respondent

Dated: January 11, 2001

# EXHIBIT - 1

**U.S. Department of Ju**⬤ :                           Decision of ⬤ `oard of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

---

File:    A76 766 772 - York                                    Date:    DEC 11 2000

In re:   MAHER OMARI

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    Pro se

ON BEHALF OF SERVICE:    Jeffrey T. Bubier
                         Assistant District Counsel

CHARGE:

   Notice:   Sec.   237(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(iii)] -
                   Convicted of aggravated felony

   In a decision dated October 8, 1999, an Immigration Judge found the respondent removable as charged, but granted his application for withholding of removal under section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §1231(b)(3). The Immigration and Naturalization Service appealed from this decision and we sustained the appeal, finding the respondent had failed to demonstrate his eligibility for this relief. We, however, remanded the record to allow the respondent an opportunity to apply for relief under the Convention Against Torture. On May 24, 2000, the Immigration Judge granted this relief and the Service has again appealed. The appeal will be dismissed.

   The respondent is a native and citizen of Jordan, who was admitted as a non-immigrant visitor in October 1989. He was convicted on October 2, 1998, of the offense of Conspiracy to Defraud the Government, in violation of 18 U.S.C. § 371. There is no question that the respondent has been convicted of an aggravated felony as that term is defined in section 101(a)(43)(M) of the Act, 8 U.S.C. § 1101(a)(43)(M). As such, he is ineligible for asylum under section 208 of the Act, 8 U.S.C. § 1158. Further, as we previously held, his situation does not place him within the protection of withholding of removal and deportation pursuant to section 241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3).

   We first note that the facts of this case, as laid out by the Immigration Judge, are not in dispute. Throughout the proceedings both the Immigration Judge and this Board have found the respondent to be credible, and we further agree with the Immigration Judge that the respondent's mother who testified as to the facts of the case was also credible. At this time we only repeat the basic facts of the case for the convenience of the reader. The respondent testified that he fears returning to Jordan because he believes he will be killed, in accordance with tribal law, for having had sexual relations

with his girlfriend, a woman engaged to another man. The girlfriend has already been killed. Both the respondent and the people who wish to harm him are from the same tribe. He asserts that although Jordan has laws criminalizing the killing of men and women who commit adultery, the government will not protect him from his or his murdered girlfriend's family. In fact, he and his mother testified that the respondent's father, a general in the Jordanian army, will help those pursuing the respondent. Before leaving Jordan, the respondent's father had the army detain him and he was only able to escape with the help of his mother, who later fled retribution for her help. She currently lives in California. The respondent was also shot in the leg by his pursuers at one point.

The record clearly supports that so-called "honor killing," individuals being killed by family members for the sake of honor, is practiced in Jordan. Unlike the testimony, the documentary evidence, for the most part, points to women, rather than men, being subjected to this practice (Exh. 8). As we noted in our previous decision, one article, states that "[m]ale relatives rarely attack men suspected of infidelity, partly because this would spark a blood feud with the man's kinsmen and partly because of double standards" (Exh. 8, pg 1). Further, Article 340 of the Jordan Penal Code, which states: "[h]e who discovers his wife or a female relative committing adultery and kills, wounds or injures one or both of them is exempted from any penalty" (Exh. 8, pg. 1). While it is clear that women are at much, much greater risk in Jordan, this article indicates that men, too, might face problems. Particularly in a case such as the one now before us, where it is the respondent's own kin that wishes him dead. Thus obviating the problem of a feud with his kinsmen. We agree with the Service that more documentary evidence would have been helpful to the respondent's claim. However, here, where there is proof that the practice of honor killing exists and the testimony from both witnesses is found to be credible, we find sufficient support for the claim.

The respondent would clearly face problems if returned to Jordan. We now turn to the question of whether he faces possible torture as considered under Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. G.A. Res. 39/46, Annex, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984) ("Convention Against Torture" or "Convention"). The term "torture" is defined in federal regulations as:

> . . . any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

See 8 C.F.R. § 208.18(a).

On appeal, the Service argues that the respondent has not demonstrated that the possible torture he will face will be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." If this were a simple case of a revenge

2

A76 766 772

killing, we would agree. However, here, the respondent is the son of a high ranking government official, a general in the Jordanian army. It is clear from the testimony at the hearing that this general will use the police of Jordan, and other forces at this disposal, to arrest the respondent and turn him over to his kinsmen to be murdered. We recently addressed the issue of what constitutes "acquiescence" in a precedent decision, holding that protection does not extend to persons who fear entities the government is unable to control. *Matter of S-V-*, Interim Decision 3430 (BIA 2000). As we noted in that decision, however, protection extends to acts that occur within the context of governmental authority. *Id.* at 8 (citation omitted). Although the Service argues that the father would not be acting within his official capacity, we note that he would be ordering government agents to apprehend the respondent and it does not appear he would face any problems within the government for this act. In fact, he previously had his son apprehended to face death, without retribution. Further, since that time he has been promoted from colonel to general. The respondent fears that his father would use his governmental authority to arrest him and present him to those who will kill him. Although the laws of Jordan, apparently, would require the father to protect the respondent, here the father has awareness of the impending murder, and not only would breach his duty to protect the respondent, he would act in his governmental capacity to martial forces to present the respondent to his pursuers. An act he attempted in the past. Such action meets the threshold presented by the regulations, that a public official consent or acquiesce in the torture. 8 C.F.R. § 208.18(a)(1); *see Matter of S-V-, supra.*

Based on the foregoing, we agree with the Immigration Judge that it is more likely than not that the respondent will be tortured if he returns to Jordan. Accordingly, the following order will be entered.

ORDER: The appeal is dismissed.

_____
FOR THE BOARD

**EXHIBIT - 2**




U.S. Department of Justice
Immigration and Naturalization Service

A76 766 772

PO Box 209
White Deer, PA 17887

December 21, 2000

Maher Omari
99-00354
Snyder County Prison
600 Old Colony Road
Selinsgrove, PA 17870

RE: Maher OMARI
    A76 766 772

Mr. Omari,

Reference is made to your letter dated December 14, 2000, in which you request release from INS custody. Please be advised that this office is aware the Board of Immigration Appeals' decision in this case. However, your request will be denied at this time.

On May 24, 2000, the Immigration Judge found you removable but withheld your removal to Jordan under the Contention Against Torture. The Immigration and Naturalization Service (INS) appealed that decision to the Board of Immigration Appeals (BIA) and on December 11, 2000 the BIA dismissed that appeal. Therefore the Removal Order became administratively final and the removal period began on that date. The granting of withholding does not prevent the INS from removing you to another country. If the INS has failed to remove you within the removal period, you may be released, if it is determined that you do not present a threat to society or a flight risk.

As you can see by the attached notice, your case will be reviewed on February 1, 2000, to determine if you present a threat to society or a flight risk. You have the right to submit evidence on your behalf for consideration in this review.

Sincerely,

Robert M. Culley
Institutional Hearing Program Director

# EXHIBIT - 3



U.S. Department of Justice
Immigration and Naturalization Service

A76 766 772

PO Box 209
White Deer, PA 17887

Maher OMARI                           A#76 766 772
C/O Snyder County Jail
600 Old Colony Road
Selinsgrove, PA 17870

## *Notice to Alien of File Custody Review*

You are detained in the custody of the Immigration and Naturalization Service (INS) and you are required to cooperate with the INS in effecting your removal from the United States. If the INS has not removed you from the United States within the removal period as set forth in INA 241(a) (normally 90-days) of either: 1) your entering INS custody with a final order of removal, deportation or exclusion, or 2) the date of any final order you receive while you are in INS custody, the INS District Director will review your case for consideration of release on an Order of Supervision. Release, however, is dependent on your demonstrating by "clear and convincing evidence" that you will not pose a danger to the community and will not be a significant flight risk.

Your custody status will be reviewed on or about February 1, 2000. The District Director may consider, but is not limited to considering the following:

1. The nature and seriousness of your criminal convictions;
2. Other criminal history;
3. Sentence(s) imposed and time actually served;
4. History of escapes, failures to appear for judicial or other proceedings, and other defaults;
5. Probation history;
6. Disciplinary problems while incarcerated;
7. Evidence of rehabilitative effort or recidivism;
8. Equities in the United States;
9. Prior immigration violations and history; and
10. Cooperation in obtaining your travel document.

You may submit any documentation you wish to be reviewed in support of your release, prior to the date listed above, to the attention of the Officer and address below. English translations must be provided pursuant to 8 CFR 103.2(b)(5). An attorney or other person may submit materials on your behalf.

U.S. Department of Justice
**Immigration and Naturalization Service**
Attn: David O'Neill, Deportation Officer
P.O. Box 209
White Deer, PA 17887

### METHOD OF SERVICE

I certify that this form was provided to the alien by:     (Hand)            (Institution Mail)
( ) CC: Attorney of Record or Designated Representative
( ) CC: A-file

_____      David O'Neill            12/26/00
Signature of Officer                 Print Name of Officer    Date
(Final 10/18/99)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

On this 11th day of January, 2001, she served copies of the foregoing document by placing said copies in postpaid envelopes addressed to the persons hereinafter named, at the addresses stated, which are the last known addresses of petitioners, and by depositing said envelopes and contents in the United States Mail at Harrisburg, Pennsylvania to:

Maher Omari
A76 766 772
Snyder County Prison
600 Old Colony Road
Selinsgrove, PA 17870

*Kathy Enders*
KATHY ENDERS
Legal Secretary